**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**NATIONAL EXECUTIVE PLANNERS, LTD., et al., Defendants.**

**No. C–78–590–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

Dec. 5, 1980.

---

Pamela Beghel Threadgill, John M. Kelly and Joseph L. Grant, Atlanta, Ga., for plaintiff.

William L. Daisy and Donald T. Bogan, Greensboro, N. C., for defendants National Executive Planners, Dan King Brainard, Richard O. White and Barry Eugene Weed.

Eric P. Handler, Greensboro, N. C., and Joel A. Haber, Chicago, Ill., for Sheldon Moss, Individually and D/B/A Television Marketing and Correlated Equities Corp.

## MEMORANDUM OPINION AND ORDER

GORDON, Chief Judge.

This case was noticed for hearing on October 27, 1980, in the United States Court-house, Greensboro, North Carolina. Pursuant to the notice, the motion of the plaintiff Securities and Exchange Commission ("SEC") for partial summary judgment against National Executive Planners, Ltd. ("NEP") and five individual defendants was heard. Having considered the oral arguments, the briefs and affidavits thereto, and the discovery materials of record, the Court concludes that the motion should be granted for Count One, Count Two, and Count Four of the Amended Complaint, and denied for Count Three, Count Five, and Count Six.

## I. BACKGROUND

On November 27, 1978, the SEC filed a complaint which sought equitable relief against the defendants NEP; Sheldon Moss, individually, and doing business as Television Marketing ("TVM"); Correlated Equities Corporation ("CEC"); Dan King Brainard; Roy Heybrock; William H. Cain; and Richard O. White. On January 22, 1979, the defendants Moss and CEC consented to a permanent injunction and disgorgement order requiring them to pay four million five hundred thousand dollars ($4,500,000.00) into the Registry of this Court.[1] On March 20, 1979, the SEC amended its complaint to include Barry Eugene Weed as a defendant. When the original complaint was filed, the then-named defendants consented, without admitting or denying the allegations, to the entry of preliminary injunctions. By this motion, the SEC seeks permanent injunctive relief and disgorgement orders against all defendants except Moss and CEC. These remaining defendants are NEP, a North Carolina corporation engaged in the business of rendering personal services to clients who seek advice on investment planning, including insurance, avoidance of tax payments, and investment savings; Brainard, the president of NEP; and Heybrock, Cain, White, and Weed, all vice presidents of NEP (all remaining defendants are collectively hereinafter the "NEP defendants").

---

1. The assets of Moss and CEC are in receivership by consent order of this Court. It appears that the liquidation of those assets will realize only a small fraction of four and a half million dollars.

The plaintiff's motion for partial summary judgment was supported by affidavits, which are supplemented by a voluminous amount of discovery in both this and a companion class action case. *See Simkins v. National Executive Planners, Ltd.*, No. C–78–591–G (filed in the Middle District of North Carolina on the same day as the instant case, November 27, 1978). Moreover, the plaintiff served the NEP defendants with 82 Requests for Admission on August 27, 1979. The NEP defendants have failed to respond to the Requests for Admission in any fashion. Under Fed.R. Civ.P. 36, those matters thus are admitted for the purpose of the pending action, and are deemed to be established conclusively.[2] The NEP defendants have not supported their response to the SEC's motion for partial summary judgment by affidavits or by citation to the discovery materials of record as required by Fed.R.Civ.P. 56(e). Rather, they resist summary judgment on the grounds that (1) the TVM instruments which investors purchased from the NEP defendants were not "securities"; and (2) the facts considered in the light most favorable to the defendants do not establish scienter on the part of the NEP defendants. The Court first will discuss why it considers the TVM instruments to be securities, and then will discuss the scienter issue as it applies to each of the six counts of the complaint.

## II. STATUS OF TVM INSTRUMENTS AS SECURITIES

The TVM instruments were a type of investment, often represented as an investment in commercial paper, for which the NEP salesmen solicited investors from 1974 through 1978. The company known as Television Marketing was represented to be engaged in the business of marketing household specialty products. The products supposedly were sold in Sears and other chain stores. Television Marketing purportedly stimulated sales of its products by saturating the airwaves with television commercials in a given locality. The products then were supposedly delivered to the chain retail outlets, who allegedly did not pay for them promptly. The investors were told that the product they were buying was commercial paper, that Television Marketing was borrowing money from the investor against the money owed to TVM by the chain store, and that TVM assigned to each investor an account receivable from a chain store in an amount twenty per cent greater than the amount of the investment and recorded the assignment pursuant to the Uniform Commercial Code with the Secretary of State of Illinois. These representations were false. The investment also was represented falsely to the investors to be as sound as the corporations buying the products from TVM. The interest rate on the TVM instruments ranged up to 13.5 per cent, and money could be invested in terms from one to three years. Investors received monthly "interest" checks from TVM up until the fall of 1978. In reality, TVM was not a viable corporation engaged in any commercial activity remotely resembling that outlined above. Television Marketing and CEC were entities controlled by Sheldon Moss, both had the same Chicago ad-

---

**2.** The Court points out, however, that the matters contained in the Requests for Admission which appear in this opinion as undisputed specific facts are matters that the discovery materials also demonstrate to be undisputed. The Requests for Admission are replete with references to the "TVM evidences of indebtedness," and the Court has not considered that characterization to be established conclusively. "Evidences of indebtedness" fall squarely within the definition of a "security" in the 1933 Act, and the defendants stoutly maintain that the instruments at issue are not securities. By the letter of Rule 36, and the spirit as well, the Court would have been justified in considering it established that the TVM instruments were "evidences of indebtedness." The Court did not do so because it desires to incorporate part of this opinion in the companion class action case, and "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding." Fed.R.Civ.P. 36(b). Because it is clear from Rule 36 that Requests for Admission may be used to establish matters of law as well as matters of fact, failure to respond to them in the manner set forth in the rule can only be considered to be a dangerous practice on the part of attorneys.

dress at times, during 1978 both entities shared a joint checking account, and at times TVM was represented to be a division of CEC. Some of the money invested by clients of NEP was retained by NEP, and the rest of the money was used by Moss in various corporations and enterprises, including paying the "interest" by checks to prior investors in TVM. Both Moss and CEC had been enjoined on September 27, 1972, from further violating securities registration laws and antifraud provisions of the federal securities laws.

The plaintiff SEC asserts that the TVM instruments are "evidences of indebtedness", and are thus within the definition of a "security" as defined in the Securities Act of 1933 ("1933 Act"). 15 U.S.C. § 77b(1). It is further the SEC's position that though "evidences of indebtedness" does not appear in the definition section of the Securities Exchange Act of 1934 ("1934 Act"), it falls within the ambit of the 1934 Act as well because, by virtue of inclusion in the 1933 Act, evidences of indebtedness were "instrument[s] commonly known as ... 'securit[ies]' " by the framers of the 1934 Act. 15 U.S.C. § 78c(a)(10). This argument for inclusion within the 1934 Act, though persuasive, is not entirely convincing to the Court because most of the rest of the definition section of "security" in the 1934 Act is a word-for-word repetition of the definition section of "security" in the 1933 Act. Indeed, "evidences of indebtedness" might be said to be conspicuous by its absence in the 1934 Act. *See Zeller v. Boque Electric Mfg. Corp.*, 476 F.2d 795, 800 (2d Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).

The Supreme Court has said, however, that the absence of the term "evidences of indebtedness" from the definition in the 1934 Act does not assume controlling significance when other descriptive terms in the 1934 Act cover the instruments at issue, and when the relationship with the enterprise was an investment relationship, rather than a true debtor-creditor relationship. *Tcherepnin v. Knight*, 389 U.S. 332, 342–44, 88

S.Ct. 548, 556–557, 19 L.Ed.2d 564 (1967). The Fifth Circuit in *SEC v. Continental Commodities Corp.*, 497 F.2d 516 (5th Cir. 1974), pointed out that many courts have found the "commercial-investment dichotomy" in the statutory definition of "notes" in both the 1933 and 1934 Acts to be crucial in determining whether certain short-term notes are exempted from the registration requirements of the 1933 Act and exempted altogether from the 1934 Act. 497 F.2d at 523–24. It is likely that the TVM instruments are "evidences of indebtedness", and that they are covered by both the 1933 and the 1934 Acts. Clearly, however, the "lending" of money from investors to TVM was not an ordinary commercial transaction; it was an investment transaction, and it was characterized that way to prospective investors by the individual NEP defendants. Because it was an investment transaction, the Court bases its holding that the TVM instruments were securities on its conclusion that the transaction of "lending" money to TVM was an investment contract.[3]

"The Supreme Court has repeatedly reminded that securities legislation is to be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.' " *SEC v. Haffenden-Rimar International, Inc.*, 496 F.2d 1192, 1193 (4th Cir. 1974). In *Haffenden-Rimar*, the Fourth Circuit affirmed and adopted the memorandum opinion of Judge Oren R. Lewis in which he stated:

> "The Securities Act clearly reaches any novel, uncommon or irregular device, whatever it appears to be, if it be proved as a matter of fact that it was widely offered or dealt in under terms or courses of dealing which established its character in commerce as an investment contract or as any interest or instrument commonly known as a security. The Supreme Court of the United States has so stated in *S.E.C. v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943)."

362 F.Supp. 323, 326 (E.D.Va.1973).

The fraud that was perpetrated on the investors in TVM is one that both the 1933

---

**3.** The term "investment contract" is found within the definition sections of both the 1933 and the 1934 Acts. 15 U.S.C. § 77b(1); *id.* § 78c(a)(10).

and 1934 Acts were designed to prevent. If a bank or other commercial lending institution had been "lending" money to TVM, it would have required disclosure of detailed financial statements of TVM, it would have verified the existence of its collateral, and it would have taken such other steps as necessary to assure itself that the "loan" and the interest thereon would be repaid. If it did not do these things and suffered a four-and-a-half million dollar loss, that bank would receive very little public and judicial sympathy. The securities laws were passed to ensure that the public would get the same sort of full and fair disclosure and protection against fraud that this hypothetical bank would get. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

The TVM investors were solicited by the individual NEP defendants to invest sums of money in a "product known as commercial paper" (as it was phrased in many of the sales pitches). The NEP defendants held themselves out as expert financial planners who carefully researched investment opportunities. When a NEP client invested in TVM, the investor received a form entitled Assignment of Receivables which set forth the amount invested, the interest rate, and the term of the investment. Some investors later received by mail a UCC form which was the purported security for the investment. The NEP defendants sold the TVM instruments to nearly three hundred investors. The Court concludes that "under the totality of the circumstances" [*Haffenden-Rimar, supra,* 496 F.2d at 1193] the relevant transactions constituted an offer and sale of a security in the form of an investment contract.

An investment contract was defined by the Supreme Court in 1946 as:

"a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."

*SEC v. M. J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–1103, 90 L.Ed. 1244 (1946). The *Howey* test contains three elements: (1) an investment of money, (2) in a scheme that functions as a common enterprise, (3) the profits of which are derived solely from the efforts of others. The defendants assert that both the second and third elements are absent in the present case.

■ The Court notes first that the Fifth Circuit has stated: "A literal application of the *Howey* test would frustrate the remedial purposes of the Act." *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 480 (5th Cir. 1974). Second, the Supreme Court has counseled that "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). In the instant case, however, even a literal reading of the *Howey* test squarely includes the sale of the TVM instruments. The interest to be received by the investors was quite apparently not contingent on their own efforts. Presumably, the reason that TVM could afford to pay higher than the current interest rates of the time was due to the managerial expertise and business acumen of its operating officers. The investors contributed only money to the success of the enterprise. The third element is thus present. As to the "common enterprise" element, "the critical inquiry is confined to whether the fortuity of the investments collectively is essentially dependent upon promoter expertise." *SEC v. Continental Commodities Corp.*, 497 F.2d 516, 522 (5th Cir. 1974). Thus, even though the investors were "guaranteed" a rate of return on their investment, and even though that rate varied from investor to investor, it is manifest that the success of the enterprise as a whole depended on the success of those engaged in soliciting "loans" from prospective investors. The supposed business of TVM was represented as one which had a "cash flow" problem. Therefore, the fortunes of all investors

were "interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 n.7 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). Even though the amount of the *investment* itself was falsely represented to be "collateralized", the "interest" that the investors were due to receive was obviously to be dependent upon the success of TVM as an enterprise. The second *Howey* element is thus also fulfilled.

## III. THE SCIENTER REQUIREMENT

■ The Court agrees with the defendants that the facts considered most favorably to them do not establish scienter as a matter of law on the part of the NEP defendants. These individual defendants have maintained strenuously that they were duped by Moss, and that they believed the representations they made to prospective investors until the collapse of the scheme in the fall of 1978. "Scienter", defined by the Supreme Court as "a mental state embracing intent to deceive, manipulate, or defraud," [*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12, 96 S.Ct. 1375, 1381 n.12, 47 L.Ed.2d 668 (1976)] is an issue for the factfinder to infer from all the evidence in the case. *Clark v. Cameron-Brown Co.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,539, at 97,811 (M.D.N.C. Jun. 16, 1980). As the Supreme Court has not decided, [*see, Aaron v. SEC*, 446 U.S. 680, 1950 n.5, 100 S.Ct. 1945, 1950 n.5, 64 L.Ed.2d 611 (1980)] this Court does not now decide whether reckless behavior is sufficient to impose liability under those provisions of the securities laws for which scienter must be established. This is a matter that should be addressed in the trial briefs of the parties at the appropriate time. The Court will now discuss the applicability of the scienter requirement to each of the six counts of the plaintiff SEC's Amended Complaint.

### A. *Count One—Registration Requirement of the 1933 Act*

Count One alleges that the defendants violated sections 5(a) and 5(c) of the 1933 Act, 15 U.S.C. §§ 77e(a), 77e(c). These provisions prohibit the sale of unregistered securities by making use of transportation and communication means and instruments of interstate commerce, such as the mails, telephones, and newspapers. Certain transactions are exempt from registration, but the burden is on the defendants to establish the availability of an exemption, and they have not attempted to do so. The Court believes that no exemption is available in the instant case. *See SEC v. Galaxy Foods, Inc.*, 417 F.Supp. 1225, 1242 (E.D.N.Y.1976), *aff'd mem.*, 556 F.2d 559 (2d Cir. 1977).

■ The TVM securities were not registered with the SEC. It is also plain that the mails and telephones were used in the sale and offers of sale of the TVM instruments. The plaintiff is thus entitled to summary judgment on Count One if scienter is not an element of a section 5 violation. The Court concludes that scienter is not required by the plain language of the statute, and the case law confirms this conclusion. *Feeney v. SEC*, 564 F.2d 260, 262 (8th Cir. 1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978); *SEC v. L & S Petroleum, Inc.*, 444 F.Supp. 38, 40 (W.D.Okla.1977); *SEC v. Galaxy Foods, Inc., supra*, 417 F.Supp. at 1243.

### B. *Count Two—Antifraud Provision of the 1933 Act*

■ Count Two alleges that the defendants violated section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), the antifraud provision of that enactment. The Supreme Court has recently decided the scienter issue as it applies to this provision in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). *Aaron* held that scienter is required for violations of § 17(a)(1) [15 U.S.C. § 77q(a)(1)], but that no scienter need be established for violations of § 17(a)(2) [15 U.S.C. § 77q(a)(2)] and § 17(a)(3) [15 U.S.C. § 77q(a)(3)]. Section 17(a) reads as follows:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate

commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

The Amended Complaint in paragraph 20 alleges generally and in the conclusory terms of the statute that the defendants violated section 17(a) of the 1933 Act. The particular allegations of paragraphs 21 and 22, however, set forth alleged untrue statements of material fact and omissions to state material facts, an apparent violation of § 17(a)(2). The Court concludes that the undisputed facts show that the defendants made untrue statements of material fact. Virtually everything the investors were told about TVM was false. Summary judgment will therefore be granted on Count Two on the basis that it alleges a violation of 17(a)(2).[4]

*C. Count Three—Antifraud Provision of the 1934 Act*

■ Count Three alleges that the defendants violated section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), established that scienter is a necessary element of this antifraud provision. *Aaron v. SEC*, reiterated that "scienter is an element of a violation of § 10(b) and Rule 10b–5, regardless of the identity of the plaintiff or the nature of the relief sought." 446 U.S. at 691, 100 S.Ct. at 1952. Summary judgment will not be granted on this count.

*D. Count Four—Broker/Dealer Registration*

■ Count Four alleges that the defendant NEP, aided and abetted by the other NEP defendants, violated section 15(a)(1) of the 1934 Act, 15 U.S.C. § 78o(a)(1). This provision requires that an entity engaged in business as a broker or dealer, using the mails to effect any transactions in the sale of securities, must be registered with the SEC as a broker or dealer. NEP was never registered as a broker-dealer. All of NEP's salespersons were registered with Investors Financial Planning, Inc. ("IFP"). IFP was registered as a broker-dealer with the SEC.

"Broker" is defined in the 1934 Act as "any person engaged in the business of effecting transactions in securities for the account of another...." 15 U.S.C. § 78c(a)(4). A dealer is one who buys and sells securities for his own account, through a broker or otherwise. 15 U.S.C. § 78c(a)(5). Clearly, NEP was a broker-dealer as defined in the 1934 Act. It solicited clients actively, and $4,300,000.00 worth of TVM instruments were sold by it. NEP thus had a "certain regularity of participation in securities transactions at key points in the chain of distribution." *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 411 F.Supp. 411, 415 (D.Mass.), *aff'd*, 545 F.2d 754 (1st Cir. 1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

■ The statute in question contains no language from which a scienter requirement may be derived. *See Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357, 361–62 (5th Cir.), *cert. denied*, 393 U.S. 913, 89 S.Ct. 240, 21 L.Ed.2d 198 (1968). Summary judgment will thus be granted for Count Four.

*E. Count Five—Investment Advisor Registration*

■ Count Five alleges a violation of section 203(a) of the Investment Advisers

---

4. The Court considers that Count Two is thus ruled on dispositively. The plaintiff SEC has not pleaded a claim for relief based on violations of § 17(a)(1) [15 U.S.C. § 77q(a)(1)] or § 17(a)(3) [15 U.S.C. § 77q(a)(3)] other than in the conclusory terms of the statute. The SEC may not adduce evidence at trial designed to show violations of § 17(a)(1) of § 17(a)(3).

Act of 1940, 15 U.S.C. § 80b–3(a), which prohibits any investment adviser from using instrumentalities in interstate commerce in connection with his or its business as an investment adviser unless registered with the SEC. The defendant Brainard has been registered with the SEC as an investment adviser since October 15, 1973, but NEP has never been registered as an investment adviser. The SEC alleges that NEP is engaged in the business of an investment adviser, and that it is aided and abetted in that activity by the other NEP defendants. An "investment adviser" is defined as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. . . ." 15 U.S.C. § 80b–2(a)(11). NEP actively promoted its expertise in the area of financial planning and investment advice. There is no indication, however, that NEP received compensation for its investment advice. Rather, it received commissions on the sale of various investment products it offered. The definition of "investment adviser" excludes "any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor." 15 U.S.C. § 80b–2(a)(11)(C). The Court has heretofore concluded that NEP was a broker-dealer. The Court now concludes that the investment advice NEP gave was incidental to the conduct of selling the TVM instruments and the other investment products. *See Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 464 F.Supp. 528, 538 (D.Md. 1978). NEP is thus not an investment adviser within the meaning of the Investment Advisers Act, and the NEP defendants cannot be liable for its failure to register as an investment adviser.

It is unnecessary for the Court to decide whether the scienter requirement applies to the violation alleged in Count Five.

### F.  Count Six—Antifraud Provision of the Adviser Act

Count Six alleges a violation of sections 206(1) and 206(2) of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b–6(1), (2). These provisions provide that:

> "It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; . . ."

Section 206(1) tracks the language of § 17(a)(1) of the 1933 Act, and § 206(2) tracks the language of § 17(a)(3) of the 1933 Act. Section 17(a) is the provision at issue in Count Two, and is set forth and discussed above. As stated above, *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), has settled the issue of scienter regarding § 17(a) of the 1933 Act. 15 U.S.C. § 77q(a). Following the reasoning of *Aaron,* scienter would not apply to a violation of § 206(2) [15 U.S.C. § 80b–6(2)], but would apply to a violation of § 206(1) [15 U.S.C. § 80b–6(1)]. This result was reached by the Fifth Circuit in a decision which preceded *Aaron. See Steadman v. SEC,* 603 F.2d 1126, 1134 (5th Cir. 1979), *cert. granted,* 446 U.S. 917, 100 S.Ct. 1849, 64 L.Ed.2d 271 (1980).

The Amended Complaint alleges that the defendant NEP violated § 206(1) and § 206(2) of the Advisers Act, and was aided and abetted by the individual NEP defendants. The Court holds that NEP was not an investment adviser within the meaning of the Act. The defendant Brainard, however, was registered with the SEC as an investment adviser, and the issue thus arises whether he may be adjudged liable for violations of § 206(2) [15 U.S.C. § 80b–6(2)]. By Act of Congress on September 13, 1960, the words "registered under section 203 [15 U.S.C. § 80b–3]" were deleted following the word "adviser" in section 206 [15 U.S.C. § 80b–6]. The Court therefore concludes that the defendant Brainard may not be held liable under this Count, because though registered as an investment adviser, he was *not* an investment adviser with respect to the sale of the TVM securities.

## IV. CONCLUSION

For the foregoing reasons, it is OR-DERED that the plaintiff SEC's motion for partial summary judgment against the defendants NEP, Brainard, Heybrock, Cain, White, and Weed should be, and the same is hereby, GRANTED on Count One, Count Two, and Count Four of the Amended Complaint.

Summary judgment is DENIED on Count Three, Count Five, and Count Six.[5]

---

**5.** The Court does not by this Memorandum Opinion and Order grant the injunctive relief and the disgorgement orders sought by the SEC. A preliminary injunction is in effect against all defendants except Barry Eugene Weed. The companion class action case will be tried or reach other final disposition within six months, and the Court considers that case to be a more appropriate vehicle for the payment of damages to the TVM investors who have lost money. Partial summary judgment has been granted today to the class plaintiffs against some of the defendants in the companion case. The Court is also reluctant to disturb the consent preliminary injunction because of the discussion in *SEC v. Aaron,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), regarding the necessity of a showing that the violations are likely to recur before a permanent injunction may issue. *Aaron* also points out that a finding of scienter may justify the imposition of a permanent injunction, but the Court has refrained from making any findings in the instant Order regarding scienter. The Court believes that the SEC's other licensing and enforcement procedures are sufficient to protect the public until the final disposition of the class action case.