**David T. COMBS and Sarah E. Combs, Plaintiffs,**

v.

**James O. BAKKER, Tamara Faye Bakker, and Richard Dortch, Defendants.**

No. C–C–87–333–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Aug. 8, 1988.

Edward G. Connette, Louis L. Lesesne, Jr., Gillespie, Lesesne & Connette, Charlotte, N.C., for plaintiffs.

Mark T. Calloway, James McElroy & Diehl, P.A., Charlotte, N.C., James H. Toms, Hendersonville, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on all Defendants' Motions to dismiss the action against them pursuant to Rule 12(b)(1), (2), (3), (4), (5), (6), (7), and Rule 19(b) and, by the Bakker Defendants, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiffs' Amended Complaint, filed July 20, 1988, alleges in substance that Defendants were principals in Heritage Village Missionary Fellowship, Inc. ("PTL"), an enterprise engaged in interstate commerce; that its activities affect interstate commerce within the meaning of RICO; that Defendants were directors on the board of PTL; that Plaintiffs, at all times citizens and residents of West Virginia, paid $1,000 to PTL in consideration of a "lifetime partnership," the purchase being induced by repeated representations by Defendants by means of mail, telephone, and television that such purchase would entitle Plaintiffs and others to three free nights per year at the Grand Hotel at Heritage Village, South Carolina; that the mail solicitations were made in part from a Charlotte, North Carolina address and on information and belief the televised broadcasts were from stations in the Western District of North Carolina; that Plaintiffs talked by telephone with Defendants' agents from Plaintiffs' home in West Virginia; that Plaintiffs have been unable to obtain a free room at the Grand Hotel as promised by Defendants; that a substantial number of lifetime partnerships were sold to individuals residing in the Western District of North Carolina; that Defendants knew they were selling more partnerships than could be accommodated by the Grand Hotel and that Defendants knew they were misrepresenting and over-

selling the partnerships and that they used the mails, wire, and television to further the scheme of selling partnerships; that Defendants acted intentionally and specifically intended to induce Plaintiffs to purchase partnerships, and that Plaintiffs relied on such statements by Defendants; that Defendants were engaged in two or more predicate acts of mail and wire fraud, *i.e.,* engaged in selling over 55,000 such lifetime partnerships; that the solicitation of each such lifetime partnership through mail or wire fraud constituted an unlawful offense or "predicate act" in furtherance of Defendants' "pattern of racketeering activity" within the meaning of RICO; that Defendants received substantial salaries and benefits from PTL and its related enterprises and used or invested the proceeds of income derived from the pattern of racketeering activity to establish or operate PTL and related enterprises; further, Defendants conducted the affairs of PTL and its related enterprises through this pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(a), (c), and (d).

Plaintiffs' Amended Complaint contains three other claims:

(a) Defendants' actions constitute fraud under applicable state law.

(b) Defendants' actions constitute unfair and deceptive acts and practices in the conduct of trade or commerce in violation of the *South* Carolina Unfair Trade Practices Act, S.C.Code of Law, Section 35-9-10, *et seq.*

(c) Defendants have breached their contractual obligation to give Plaintiffs three free nights of lodging in the Grand Hotel each year for the remainder of Plaintiffs' lives.

Plaintiffs' prayer for relief is for actual damages, treble damages, punitive damages, and attorney's fees.

## I. MOTION TO DISMISS—RULE 12(b)(6)

The Court will first consider Defendants' Motions to dismiss for failure to state a RICO Claim, Rule 12(b)(6).

This Motion only tests whether the claim has been adequately stated in the Complaint. For purposes of the Motion to dismiss, the Complaint is construed in the light most favorable to Plaintiffs and its allegations are taken as true. Wright & Miller, *Federal Practice and Procedure,* §§ 1356, 1357.

> It is axiomatic that a motion to dismiss an action for failure to state a claim upon which relief can be granted admits the facts alleged in the complaint, but challenges Plaintiff's right to relief based on those facts.

*Ward v. Hudnell,* 366 F.2d 247 (5th Cir. 1966).

Plaintiffs' first claim for relief is that Defendants violated RICO, 18 U.S.C. § 1962(a), (c), and (d).

As to this claim, Plaintiffs essentially allege that they, together with over 55,000 others, were solicited via television to purchase and did purchase lifetime partnerships.

Plaintiffs further allege that Defendants in their solicitation and sale of lifetime partnerships concealed the fact that Defendants were grossly overselling partnerships in a manner that would ban Plaintiffs and others from exercising the benefits of the partnerships and that Defendants used the mail, wire, and television to further the scheme of selling partnerships on behalf of the PTL enterprise, that the misrepresentations of Defendants were tantamount to fraud, that the solicitation of each such lifetime partnership through the use of mail, wire, and television constituted a predicate act in furtherance of Defendants' "pattern of racketeering activity" and that Defendants were therefore engaged in a pattern of racketeering activity within the meaning of RICO, and that Defendants received substantial salaries from PTL and its related enterprises, "thereby using and investing the income derived from the commission of their illegal acts."

## II. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)

The Racketeer Influenced and Corrupt Organizations Act (RICO), Title 18, United

States Code, Sections 1961–68 (1982), in pertinent part, provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1982).

For purposes of this statute "racketeering activity" is defined as:

> (A) any act or threat involving ... extortion, ... which is chargeable under State law and punishable by imprisonment for more than one year;
>
> (B) any act which is indictable under any of the following provisions of Title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud),....

18 U.S.C. § 1961(1) (Supp. II 1984). Other terms pertinent to the instant case are defined as follows:

> (3) "[P]erson" includes any individual or entity capable of holding a legal or beneficial interest in property;
>
> (4) "enterprise" includes any individual, partnership, corporation, association or other legal entity ... or group of individuals associated in fact although not a legal entity;
>
> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity; ....

■ Thus, in order to survive a Motion to dismiss the Complaint pursuant to Rule 12(b)(6), Plaintiffs must allege: (1) the existence of an enterprise which affects interstate commerce; (2) that the defendants were employed by or associated with the enterprise; (3) that the defendants participated in the conduct of the enterprise's affairs; and (4) that such participation was through a pattern of racketeering activity.

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

■ "Racketeering activity" includes extortion, mail fraud and wire fraud. 18 U.S.C. § 1961(1) (Supp. II 1984). The elements of an indictable offense under the federal mail and wire fraud statutes are: (1) the existence of a scheme to defraud, and (2) the use of the mails or interstate wires in furtherance of the fraudulent scheme. *See* 18 U.S.C. §§ 1341 (mail fraud) & 1343 (wire fraud); *United States v. Murr,* 681 F.2d 246, 248 (4th Cir.) (the common element of mail fraud cases is that the accused attempted to use the mail as an instrument of his crime), *cert. denied,* 459 U.S. 973, 103 S.Ct. 307, 74 L.Ed.2d 286 (1982); *United States v. Condolon,* 600 F.2d 7, 8 (4th Cir.1979) (must show a scheme to defraud and use of an interstate communication facility, such as a telephone, to execute that scheme). *See also Virden v. Graphics One,* 623 F.Supp. 1417 (C.D.Cal.1985). A "scheme to defraud" must seek to deprive one of property through fraudulent or deceptive means, such as material misrepresentation, concealment, breach of duty to disclose information or taking of bribes or kickbacks. *United States v. Pintar,* 630 F.2d 1270 (8th Cir.1980).

A "pattern" of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (1982). "[T]wo isolated acts of racketeering activity do not constitute a pattern." *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. " 'The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *Id., quoting* S.Rep. No. 817, 91st Cong., 2d Sess. 158 (1969) (emphasis in original).

"Scheme" is defined as "[a] design or plan formed to accomplish some purpose; a system." *Black's Law Dictionary* 1206 (5th ed. 1979).

*As long as more than one racketeering activity* is sufficiently alleged, a "pattern" *may exist even if the racketeering activities contemplate a single scheme. See Bank of America Nat'l Trust & Savings Ass'n v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986).... In its discussion of "pattern," *neither* RICO nor its legislative history refers to "pattern" in terms of "schemes." The statute refers to "acts," two or more of which must be "related" and in "continuity" to constitute a "pattern."

*Tryco Trucking Co. v. Belk Store Services,* 634 F.Supp. 1327, 1334 (W.D.N.C.1986) (emphasis added).

■ Thus, there may be only one design or plan (scheme) to engage in fraud, but there must be *at least* two racketeering activities to carry out the plans to engage in fraud. As was stated in *Walk v. The Baltimore and Ohio R.R.,* 847 F.2d 1100, 1106 (4th Cir.1988):

We wish to emphasize that by focusing on the ultimate objective of the related predicate acts at issue, we are not holding that it is necessary to show more than one fraudulent "scheme" or criminal "episode" to establish a pattern. Such an approach is, in our judgment, utterly indefensible after *Sedima,* for the RICO statute itself contains no requirement of multiple "schemes" or "episodes."

■ What Plaintiffs must allege is that Defendants have conducted the alleged enterprise "through" a pattern of racketeering activity, and that requires Plaintiffs to allege more than the one racketeering activity they have alleged. The only racketeering activity alleged by Plaintiffs is the infliction of a single basic injury—the sale of partnerships by misrepresentation. The mere fact that Plaintiffs allege that on information and belief over 55,000 lifetime partnerships were sold, which would obviously require numerous pieces of paper, and a great number of mailings and telephone calls to a great number of persons, does not mean that each mailing and telephone call was a separate transaction so as

to constitute each mailing or telephone call a racketeering activity.

The Fourth Circuit in *International Data Bank Ltd. v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987), said:

In our view, no mechanical test can determine the existence of a RICO pattern. The number of predicate acts is not an appropriate litmus test, as the perpetration of numerous acts of mail and wire fraud "may be no indication of the requisite continuity of the underlying fraudulent scheme." *Lipin Enterprises [Inc. v. Lee* ], 803 F.2d at [322] 325 [ (7th Cir.1987) ] (Cudahy, J., concurring). The focus of *Superior Oil [Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986) ] on the scope of the criminal activity is proper, but the "one continuing scheme" test enunciated in that case will not always hold true. As the *Lipin Enterprises* court noted, such a test may "allow a large, continuous scheme to escape the enhanced penalties of RICO liability." 803 F.2d at 324.

What constitutes a RICO pattern is thus a matter of criminal dimension and degree. To allow a "pattern of racketeering" to flow from a single, limited scheme *such as this one* would undermine Congress's intent that RICO serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being. The present case does not involve a "pattern of racketeering," but ordinary claims of fraud best left to "the state common law of frauds" and to "well-established federal remedial provisions." *Sedima,* 105 S.Ct. at 3293 (Marshall, J., dissenting).

(Emphasis added).

As set out in Title 18, Section 1961(5), a " [p]attern of racketeering activity' requires at least two acts of racketeering activity...." An "act" is defined as "primarily that which is done or doing; .... In a more technical sense, it means something done voluntarily by a person, and of such a nature that certain legal consequences attach to it." *Black's Law Dictionary* 24 (5th Ed.1979). It is a thing done.

The one activity alleged in the Amended Complaint is the solicitation and sale of lifetime partnerships. The mailings, phone calls, and television solicitations were in substance one activity, the activity of selling lifetime partnerships. The thing done to which certain legal consequences attached was the activity or pursuit of selling lifetime partnerships. That is the single activity alleged by Plaintiffs, and therefore there is here no pattern of racketeering activity, as the selling of lifetime partnerships is the only racketeering activity alleged. The repeated act of selling those partnerships is merely the carrying out of the same criminal activity. It does not constitute "at least two or more acts of racketeering activity;" *i.e.*, two acts of fraud by means of mail and wire.

Neither RICO nor its legislative history talks about "pattern" in terms of "schemes." It says "acts" and requires at least two acts of racketeering activity to constitute a pattern. There must be two or more offenses committed on occasions different from one another and from such other offense.

Successive mailings or use of wire or television to commit the same alleged fraudulent act, the sale of lifetime partnerships, is not sufficient to constitute a "pattern of racketeering" activity. In *Zepkin*, 812 F.2d at 154–55, the Court said:

> If the commission of two or more "acts" to perpetrate a single fraud were held to satisfy the RICO statute, then every fraud would constitute "a pattern of racketeering activity." It will be the unusual fraud that does not enlist the mails and wires in its service at least twice. Such an interpretation would thus eliminate the pattern requirement altogether.

Therefore, this Court holds that Plaintiffs' Complaint that Defendants have violated RICO, 18 U.S.C. § 1962(a), (c), and (d), does not allege facts sufficient to constitute a cause of action under Rule 12(b)(6). So much of the Complaint as is based on RICO will therefore be dismissed.

■ Subject matter jurisdiction in this Court was founded on the RICO claim as a federal question, and on diversity of citizenship. This Court's subject matter jurisdiction over the remaining state law claims depends on the existence of diversity of citizenship between Plaintiffs and Defendants and more than $10,000 in controversy. 28 U.S.C. § 1332 (1982). Diversity appears to be present. Plaintiffs assert a claim for punitive damages of more than $10,000. For the Court to conclude that diversity jurisdiction is lacking, it must appear to a legal certainty that Plaintiffs could not recover more than $10,000; *i.e.*, that Plaintiffs have no claim for punitive damages. *Wiggins v. North American Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir.1981). Plaintiffs allege a cause of action in fraud, for which punitive damages may be recovered under both North Carolina law and South Carolina law. *See Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976); *Dunsil v. E.M. Jones Chevrolet Co.*, 268 S.C. 291, 233 S.E.2d 101 (1977). This Court therefore has subject matter jurisdiction over the state law causes of action.

### III. PERSONAL JURISDICTION

■ Since the Court has found that the Amended Complaint does not set out facts sufficient to bring Defendants within the reach of the Racketeer Influenced and Corrupt Organizations Act (RICO), Plaintiffs may not take advantage of RICO's nationwide service of process provision, 18 U.S.C. § 1965.[1] The Court must therefore decide whether applicable statutes allow for the exercise of North Carolina long arm

---

1. Although the Rico service of process provision is not applicable, one of Plaintiffs' contentions concerning that provision cannot pass without comment. Section 1965 places venue of RICO actions, and allows service of process in such actions, in "any district in which [the defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In the most blatant flouting of Rule 11, Federal Rules of Civil Procedure, that this Court has witnessed in recent memory, Plaintiffs contend that Defendants have "agents" in this district because they have hired attorneys located in this district to defend this lawsuit. Simply put, this contention is ludicrous.

jurisdiction over Defendants, and whether the exercise of such jurisdiction complies with the requirements of due process.

■ On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the burden is upon the plaintiff to show by a preponderance of the evidence that the court has personal jurisdiction over the defendant. *See Marshall Exports, Inc. v. Phillips*, 507 F.2d 47, 49 (4th Cir.1974) (in case decided before the North Carolina Supreme Court expanded reach of long-arm statute to full constitutional extent, court found that burden was upon plaintiff to prove that defendant came within terms of long-arm statute).

■ Since this is a diversity action, jurisdiction of this Court follows the jurisdiction of the state courts, subject to the proviso that the minimum Constitutional requirements of jurisdiction must be met. *August v. HBA Life Insurance Co.*, 734 F.2d 168, 170 (4th Cir.1984); *Western Steer —Mom 'N' Pop's, Inc. v. FMT Investments, Inc.*, 578 F.Supp. 260, 264 (W.D.N.C.1984).

Plaintiffs contend that N.C.Gen.Stat. §§ 1–75.4 confers jurisdiction upon this court. Plaintiffs argue that the following portions of that statute give this court a basis for exercising jurisdiction over Defendants:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j)(1) of the Rules of Civil Procedure under any of the following circumstances:

(1) Local presence or status.—In any action, whether the claim arises within or without this state, in which a claim is asserted against a party who when service of process is made upon such party:

. . . . .

d. is engaged in substantial activity within this state, whether such activity is wholly interstate, intrastate, or otherwise.

(2) Special jurisdiction statutes.—In any action which may be brought under statutes of this state that specifically confer grounds for personal jurisdiction.

. . . . .

(5) Local services, goods or contracts. —In any action which:

c. arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive goods within this state, or to ship from this state goods, documents of title, or other things of value; or

d. relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction; . . . .

(8) Director or officer of a domestic corporation.—In any action against a defendant who is or was an officer or director of a domestic corporation where the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director or officer.

None of these sections is applicable in this case.

A. *Local Presence or Status*

■ Plaintiffs claim that Defendants are engaged in substantial activity in the state sufficient to bring them within the reach conferred by N.C.Gen.Stat. § 1–75.4(1)(d). Plaintiffs point out that Heritage Village Missionary Fellowship, Inc. ("PTL"), of which Defendants were officers, is a North Carolina corporation. They also direct attention to their allegation that the letters sent out by Defendants in solicitation of lifetime partners bore a Charlotte, N.C. return address and listed a Charlotte telephone number. Plaintiffs further contend that discovery will reveal other ways in which Defendants have transacted their affairs in this district, and that a ruling on Defendants' motions should await further development of the facts.

Plaintiffs do not enlighten the Court concerning what information they expect will be developed during discovery. The one motion to compel which Plaintiffs have

filed concerns interrogatories and requests for production of a purely substantive nature, not calculated to produce evidence that Defendants are engaged in substantial activity in this District. Although this Court has discretion to stay decision on the personal jurisdiction issue pending pertinent discovery, Plaintiffs have demonstrated no inclination toward discovery on the issue in the three to four months which have elapsed since Defendants filed their motions. *See Health Care Equalization v. Iowa Medical Soc'y*, 501 F.Supp. 970, 988 (S.D. Iowa 1980), *aff'd*, 851 F.2d 1020 (1988); *Empresa Nacional Siderurgica, S.A. v. Glazer Steel Co.*, 503 F.Supp. 1066 (S.D.N.Y.1980). Nor have Plaintiffs presented any evidence that discovery would reveal additional contacts with this forum. *See Gear, Inc. v. L.A. Gear California, Inc.*, 637 F.Supp. 1323, 1328–29 (S.D.N.Y.1986). The Court will not subject Defendants to a fishing expedition absent any hint that the expedition will be successful.

The North Carolina courts construe Section 1–75.4(1)(d) as conveying personal jurisdiction upon the courts to the full extent allowed by the due process clause of the United States Constitution. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629 (1977). The Court's inquiry therefore centers around whether Defendants have the requisite minimum contacts with the state of North Carolina such that the exercise of personal jurisdiction over them by a court sitting in that state does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

Plaintiffs assert that "substantial activity" is found in the following activities of Defendants in this district:

(1) Defendants *were* principals in a North Carolina corporation;

(2) The lifetime partnership solicitation letters, which *bore* Defendant James Bakker's signature and pictures of both Bakkers, *originated* from a Charlotte address, *contained* a reply envelope with a Charlotte address, and *listed* a Charlotte telephone number; and

(3) Defendants *sold* lifetime partnerships in this district, and such sales contributed to the eventual oversale of such partnerships and the consequent injury to Plaintiffs.

Plaintiffs completely ignore the plain language of § 1–75.4(1)(d) that requires that the defendant over whom jurisdiction is asserted be engaged in the predicate substantial activity "when service of process is made upon such party." The activity Plaintiffs cite was carried on before the Complaint was filed. Plaintiffs have not carried their burden of showing that Defendants were engaged in substantial activity in the state when they were served.

### B. *Special Jurisdiction Statutes*

 Plaintiffs, in their Memorandum of Law in Opposition to Defendants' Motions to Dismiss, rely upon N.C.Gen.Stat. § 55–33(a) & (c) (1982), which reads as follows:

(a) Every nonresident of this State who shall become a director of a domestic corporation shall by becoming such director be subjected to the jurisdiction of the courts of this State in all actions or proceedings brought therein by, or on behalf of, or against said corporation in which said director is a necessary or proper party, or in any action or proceeding by shareholders or creditors against said director for violation of his duty as director. . . .

. . . . .

(c) Every resident of this state who shall become a director of a domestic corporation and thereafter removes his residence from this state shall be subject to the jurisdiction of the courts of this state in all actions or proceedings brought therein by, or on behalf of, or against said corporation in which said director is a necessary or proper party, or any action or proceeding by shareholders or credi-

tors against said director for violation of his duty as a director.

Plaintiffs claim that Defendants Bakker were nonresident directors or officers of PTL, a domestic corporation, and that Defendant Dortch was a resident director or officer who has removed his residence from the state. (For purposes of these motions, the Court will assume that Defendants were directors of the corporation.) Plaintiffs contend that they are creditors of PTL, who are entitled to force Defendants to respond in this forum to their Complaint for Defendants' dereliction in corporate duties. Plaintiffs cannot claim that the present lawsuit is "an action[ ] ... by, or on behalf of, or against [the] corporation." Plaintiffs in fact have vigorously contested Defendants' motion to dismiss the Complaint for Plaintiffs' failure to include PTL in the lawsuit. Neither have Plaintiffs alleged that they are shareholders. The applicability of section 55–33 therefore, must lie in Plaintiffs' claimed status as creditors proceeding against Defendants as directors of PTL "for violation of [Defendants'] duty as director[s]."

While Plaintiffs may be correct in asserting that Defendants' alleged acts constitute a violation of Defendants' fiduciary duties as directors of PTL, it does not necessarily follow that this lawsuit is brought against Defendants in their capacity as directors or "for violation of [their] duty as directors." Plaintiffs do not allege that Defendants owed them any special duty because Defendants were directors of PTL. Plaintiffs sue Defendants for acts which would be tortious regardless of Defendants' status vis-á-vis the corporation.

### C. *Local Services, Goods, or Contracts*

As to subsection (5)c there is no allegation in the Complaint that there was a promise to deliver or receive goods within North Carolina, or to ship from North Carolina goods, documents of title, or other things of value.

As to subsection (5)d, there is no allegation in Plaintiffs' Complaint that Plaintiffs' cause of action relates to goods, documents of title, or other things of value shipped from North Carolina by Plaintiffs to Defendants. Plaintiffs' check was drawn on a West Virginia bank, payable to the order of "Jim Bakker, Heritage U.S.A." (Exhibit A, Plaintiffs' Complaint).

### D. *Director or Officer of Domestic Corporation*

The contention that this Court has jurisdiction over Defendants by virtue of their alleged status as directors of a domestic corporation is addressed in subsection B, *supra.* Section 1–75.4(8) is inapplicable.

In summary, since the Court has held that there is no RICO violation by Defendants, there is no statutory ground for the exercise of personal jurisdiction over any of Defendants by the Court in this District. The suit is by West Virginia residents complaining of a claim arising in either South Carolina or West Virginia against defendants located in Florida and California or South Carolina. It is clear that the Court lacks personal jurisdiction over Defendants and, therefore, it is unnecessary to consider the other grounds for Defendants' Motions to Dismiss. Plaintiffs will just have to drive approximately 20 miles further South down Interstate 77 to file this action in the District of South Carolina, if they in fact have a cause of action against Defendants.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motions to dismiss for lack of jurisdiction over the person, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, are GRANTED and the Motions to dismiss for failure to state a RICO claim, pursuant to Rule 12(b)(6), are GRANTED, and this action is DISMISSED without prejudice.