**David T. COMBS; Sarah E. Combs, Plaintiffs–Appellants,**

v.

**James O. BAKKER; Tammy Faye Bakker; Richard Dortch, Defendants–Appellees.**

No. 88–2897.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1989.

Decided Sept. 26, 1989.

Edward G. Connette, III (Louis L. Lesesne, Jr., Gillespie, Lesesne & Connette on brief) for plaintiffs-appellants.

Mark Timothy Calloway (James, McElroy & Diehl, P.A., on brief); James Huston Toms (Toms & Bazzle, P.A., on brief), for defendants-appellees.

Before ERVIN, Chief Judge,
PHILLIPS, Circuit Judge, and
WILLIAMS, District Judge for the
Eastern District of Virginia, sitting by
designation.

PHILLIPS, Circuit Judge:

This is an appeal by David and Sarah Combs from the district court's dismissal of their action asserting civil RICO and pendent state common law and statutory claims against James and Tamara Bakker and Richard Dortch arising from the defendants' allegedly fraudulent sale to the Combs of a "lifetime partnership" in the "PTL" enterprise. On defendants' pretrial motions, the district court dismissed the entire action on the basis that the complaint failed to state a RICO claim, and that there was no basis under state law for personal jurisdiction over the defendants with respect to the remaining pendent state-law claims.

We vacate and remand for further proceedings.

### I

Because the case was dismissed at the threshold, the essential factual and procedural background of this appeal can be quickly sketched.

As alleged in considerable factual detail, the gravamen of the Combs' complaint was that the Bakkers and Dortch had fraudulently induced them, essentially by misrepresentations of value, to purchase a "lifetime partnership" in the religious enterprise known popularly as "PTL" of which these defendants were principals. In separate claims the Combs alleged that these fraudulently induced sales constituted civil RICO violations under 18 U.S.C. §§ 1962(a), (c) and (d) by virtue of interstate mail and wire facilities use and, pendent to that federal claim, violations of state contract, tort and statutory law, whose exact details need not be elaborated for purposes of this appeal.

The defendants, by separate Rule 12(b) motions, raised across-the-board objections to the action, challenging the court's subject matter jurisdiction, venue, and jurisdiction over their persons, the sufficiency of process and the service of process, the sufficiency of the complaint to state a claim, and the failure to join "PTL" as an indispensable party. Addressing directly only the personal jurisdiction challenge under Rule 12(b)(2) and the sufficiency of statement challenge under Rule 12(b)(6), the district court, ruling on the basis of the complaint, the motions to dismiss and the Combs' response with supporting legal memoranda, dismissed the action on grounds that intermixed these two bases of challenge. In rough summary, the court's reasoning, adopting the defendants' conten-

tions, ran as follows. First, the complaint fails to state facts sufficient to show the existence of the "pattern" of racketeering activity which is an essential element of a civil RICO claim under each of the subsections, (a), (c), and (d), invoked by plaintiffs. That requires dismissal of the RICO claims under Rule 12(b)(6). With the sole federal claim therefore out of the case, only the pendent state tort, contract, and statutory claims remain, and as to them, personal jurisdiction can only be based upon state (here North Carolina) statutes asserting grounds for jurisdiction. Looking to the North Carolina statutory grounds specifically suggested by plaintiffs, none is applicable to the state claims, hence all those claims must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. On this basis, judgment dismissing the action—on the merits as to the RICO claim, without prejudice as to the pendent state claims—was entered.

This appeal followed.

## II

We start with some awkwardness resulting from the district court's approach, which instead of addressing first the more fundamental challenge under Rule 12(b)(2) to personal jurisdiction with respect to all defendants and all claims, addressed first the challenge under Rule 12(b)(6) to the merits of the RICO claims as pleaded. As is evident from the court's analysis of both challenges, it thought, though it did not expressly so rule, that it lacked personal jurisdiction with respect to the RICO claim as well as the pendent state-law claims. While we think that perception was incorrect, if it had been correct, as the district court obviously thought, it would have precluded the court's reaching the merits of the RICO claim on the 12(b)(6) challenge to its sufficiency as pleaded.

Nevertheless, given the posture in which we receive the case, we think our proper course in review is to consider first wheth-

er the district court had grounds for personal jurisdiction as to all or any of the claims, that being the actual breadth of the defendants' Rule 12(b)(2) motion, and also the more fundamental challenge. We can then appropriately address whether the RICO claim was sufficiently well-pleaded to survive the Rule 12(b)(6) motion, if the jurisdictional challenge as to that claim should first have been rejected.

### A

■ We see two basic errors in the district court's approach to and resolution of the Rule 12(b)(2) challenge to the court's personal jurisdiction. First, tainting the overall approach, was the court's apparent perception that the only basis for personal jurisdiction in respect of the RICO claims was that embodied in the nationwide service of process provisions of 18 U.S.C. § 1965(b).[1] That perception is of course wrong. Personal jurisdiction of federal courts of course may be grounded in state long-arm (or other) jurisdiction statutes in civil RICO cases as in federal question cases generally. Fed.R.Civ.P. 4(c)(2)(C)(i), (e); *see ex rel. Long v. Alexander & Alexander Services, Inc.,* 680 F.Supp. 746 (E.D. N.C.1988). *See generally* Wright & Miller, *Federal Practice & Procedure: Civil* §§ 1075, 1113 (1987).

Here, having first concluded that no cognizable RICO claim had been sufficiently pleaded, the district court then opined that as to the remaining pendent state-law claims personal jurisdiction could only be grounded in state jurisdiction statutes and turned to that as the only question now before it on defendants' Rule 12(b)(2) challenges. On that question the court then determined, for reasons to which we will return, that jurisdiction as to the remaining pendent state-law claims could not be grounded in any of the state long-arm provisions specifically urged by plaintiffs, and on that basis dismissed those claims.

For reasons to which we will now turn, we think that the court's dismissal of the

---

1. In view of our disposition of the appeal, we need not address the validity of the district court's apparent perception that (a) nationwide service of process under 18 U.S.C. § 1965(b) was not available here, and (b) would not in any event have served to confer jurisdiction as to the pendent state-law claims.

state-law claims for lack of personal jurisdiction was premature and must for that reason be vacated. And because, as our earlier discussion has indicated, state law grounds for jurisdiction serve equally to support jurisdiction over federal question claims, what we say about personal jurisdiction with respect to the dismissed state-law claims would apply as well to the federal RICO claims.

■ As indicated, the error in dismissing the state-law claims was one of prematurity. When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *See generally* 2A Moore's Fed. Prac. ¶ 12.07[2.–2]. If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *Id.* In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Id.* Properly assessed on that basis here, the plaintiffs made a sufficient prima facie showing to survive the jurisdictional challenge.

■ Responding to the jurisdictional challenge, plaintiffs identified several provisions of the North Carolina long-arm statute, G.S. § 1–75.4, as alternative grounds for the exercise of jurisdiction. We confine analysis to only one of those identified, because we think that on the written submissions before the court a prima facie showing of jurisdiction under that provision was clearly made.

N.C.G.S. § 1–75.4(1)d. asserts general jurisdiction, based on "local presence or status," over persons properly served under applicable process rules,[2]

> [i]n any action, whether the claim arises within or without this state, in which a claim is asserted against a party who when service of process is made upon such party:
>
> . . . .
>
> d. [i]s engaged in substantial activity within this state, whether such activity is wholly interstate, intrastate or otherwise.

The district court, apparently seeing this as the most likely jurisdictional ground of those identified, rejected it because the "activities" alleged in plaintiffs' complaint were all "carried on before the complaint was filed." This, said the court, failed to show, as the statute required, that the "activities" must be in progress "when service of process is made."

Under the proper test for a prima facie showing of jurisdiction, this was too stringent a requirement. Laying aside the question whether absolute contemporaneity of "activities" and service of process is constitutionally required by the "when service . . . is made" phrase,[3] contemporaneity can in any event be readily inferred here from the bald allegations of the complaint. As earlier indicated, in the course of alleg-

**2.** Though the district court did not rule on the defendants' specific challenges to the sufficiency of process and service of process as well as to personal jurisdiction, we note from the record that all three defendants were served by methods authorized for use in conjunction with assertions of jurisdiction under the North Carolina jurisdiction statutes: the Bakkers, by personal service in California; Dortch by registered mail received at a Florida address. Whether the defendants actually intended to challenge the form and mode of process independently of their more basic challenge to the existence of grounds for personal jurisdiction cannot be determined from the record.

**3.** North Carolina's long-arm statute has been interpreted by that state's highest court as intended to reach to constitutional limits. *See Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977).

ing the misrepresentations which induced their own purchase of a "lifetime partnership," the Combs' alleged that this was pursuant to a "scheme or artifice to defraud" which over time resulted in the fraudulent sale of "over 55,000" such "partnerships" through defendants' solicitation activities originating in part in the state of North Carolina. It is readily inferable, under the tolerant prima facie test, that the activities required to sell such a volume of partnerships were sufficiently "substantial" in volume and long in duration to bring them within the volume and temporal requirements of G.S. § 1–75.4(1)d.

The district court therefore acted prematurely in dismissing the pendent state-law claims for lack of personal jurisdiction. As earlier indicated, the prima facie showing of personal jurisdiction as to the state-law claims would also defeat on the present record any challenge to jurisdiction with respect to the RICO claims. This does not of course relieve the plaintiffs of the burden ultimately to prove the existence of statutory grounds by a preponderance of evidence, whether in a separate evidentiary hearing adequate to resolve dispositive factual questions, or as an incident to trial on the merits. In attempting to carry this burden, if jurisdiction remains in dispute, the plaintiffs will not of course be restricted to proof under § 1–75.4(1)d. of the state long-arm statute, but may rely on any other state jurisdictional provision that may be relevant.[4]

## B

We can quickly dispose of the district court's dismissal of the civil RICO claims for failure of the complaint sufficiently to allege a "pattern" of racketeering activity, an essential element of each of the claims. As the court understood the "pattern" requirement of this tormented statute, its gist was that there must be "more than one racketeering activity," and as the court assessed the complaint, it failed in this respect.

The only racketeering activity alleged by Plaintiffs is the infliction of a single ba-

sic injury—the sale of partnerships by misrepresentation. The mere fact that plaintiffs allege that on information and belief over 55,000 lifetime partnerships were sold, which would obviously require numerous pieces of paper, and a great number of mailings and telephone calls to a great number of persons, does not mean that each mailing and telephone call was a separate transaction so as to constitute each mailing or telephone call a racketeering activity.

*Combs v. Bakker,* 692 F.Supp. 596, 601 (W.D.N.C.1988).

This analysis, seemingly requiring at least two separate *types* of racketeering activity, in the sense of separate goals for otherwise sufficiently related and continuous predicate acts—say fraud and extortion, or murder and arson—finds no support in Supreme Court and circuit precedent in force at the time of the district court's decision. *See, e.g., International Data Bank v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987). In the interval since the district court's decision, we have indeed had the occasion specifically to reject it as a proper basis for pattern analysis. *See Brandenburg v. Seidel,* 859 F.2d 1179, 1186 n. 6 (4th Cir.1988) ("fact that the discrete objectives of each of the predicate acts were all of the same basic type would not ... prevent the predicate acts from constituting a pattern"). Much more critically, in that same interval the Supreme Court has emphasized anew that the hallmarks of the pattern requirement are simply the *relatedness* and the *continuity* of the required predicate acts constituting a "racketeering activity" rather than the singleness or multifariousness of the activity's ultimate goals or purposes. *H.J., Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

Here the allegations of multiple predicate acts of fraudulent misrepresentations by use of interstate wire and mail facilities, obviously "related" by design, and "continuous" enough to have claimed upwards of 55,000 individual victims in necessarily in-

---

4. We note that in addition to the specific provisions identified by plaintiffs and considered by the court, the defendants identified the "local act-foreign injury" provision of G.S. § 1–75.4(3) as an arguably relevant one whose availability they sought to discount.

dependent transactions, sufficiently suggests a "threat of continued criminal activity" to constitute a RICO pattern under the Supreme Court's most recent analysis of the requirement in *H.J. Id.* at ——, 109 S.Ct. at 2900.

Whether plaintiffs can indeed prove the existence of a sufficient pattern along with the other elements of the RICO claims here pleaded of course remains to be seen. But on the pleading of their complaint they were entitled to attempt proof.

### III

For the above reasons we conclude that the district court erred by prematurely dismissing certain of the claims for lack of personal jurisdiction, and further erred by dismissing the civil RICO claims for insufficiency of the complaint's allegations of a pattern of racketeering activity. Accordingly we must vacate the judgment of dismissal and remand for further proceedings consistent with this opinion.[5]

VACATED AND REMANDED.

---

**5.** Still technically pending for resolution in the district court are the defendants' challenges to venue, to subject-matter jurisdiction, and to failure to join PTL as an indispensable party. Though the district court has not addressed these challenges in view of its disposition of the case, we have thought it appropriate in the interest of justice to do so. None of these challenges has, in our opinion, any merit on the record as presently constituted.