**KLÖCKNER–PENTAPLAST OF AMERICA, INC., Plaintiff,**

v.

**ROTH DISPLAY CORPORATION, et al., Defendants.**

Civ. A. No. 94–0008–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Aug. 9, 1994.

Patricia D. McGraw, Melvin Earl Gibson, Jr., Glen Michael Robertson, Tremblay & Smith, Charlottesville, VA, for plaintiff.

James Pedin Cox, III, Edward Bennett Lowry, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, VA, for defendants.

**1120**

### MEMORANDUM OPINION

MICHAEL, Judge.

On June 26, 1992, this court entered a standing order pursuant to 28 U.S.C. § 636(b)(1)(B), referring this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his report on June 9, 1994. On June 20, 1994, defendant filed objections to the Magistrate Judge's report. Said objections having been timely and appropriately lodged, this court is obliged to undertake a *de novo* review of the Magistrate's findings. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

### I.

This diversity action is before the court on defendant's motion to dismiss for lack of *in personam* jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), or, in the alternative, to dismiss for improper venue pursuant to Fed. R.Civ.P. 12(b)(3) and 28 U.S.C. §§ 1391(a), 1406(a). For the reasons stated below, the Magistrate Judge's denial of defendant's motion to dismiss is affirmed.

### II.

Plaintiff Klöckner–Pentaplast of America, Inc. ("KPA") is a Delaware corporation with its principal place of business located in Louisa County, Virginia. Defendant Roth Display Corporation ("Roth Display") is a California corporation with its principal place of business located in San Diego, California. Defendant Richard Roth ("Roth") is a resident of Fullerton, California.

KPA contends that Roth Display repeatedly failed to pay KPA for plastic products it received from KPA in accordance with the Terms and Conditions of a contract entered into by the parties. Concerned that Roth Display would not fulfill its contractual obligations, KPA contacted Roth, the Business

Manager of Roth Display at that time. According to KPA, in response to its demands for payment, on June 1, 1993, Roth reassured KPA with a facsimile reading "[o]nce more I would like to mention that I am in complete charge of Roth Display and I will make sure, [sic] that we will live up to our agreement." The facsimile transmission included a proposed payment schedule and an order for additional materials.

KPA claims that approximately two months later, at a meeting with KPA officials, Roth reaffirmed his personal responsibility for Roth Display's overdue account. Interpreting Roth's facsimile and his subsequent purported representations as a personal guarantee of responsibility and an assumption of suretyship, KPA continued to ship goods to Roth Display. After Roth Display and Roth allegedly failed again to satisfy the corporation's debt, KPA filed this suit against Roth Display for breach of contract and against Roth for breach of contract of guarantee, breach of contract of suretyship, and fraud. KPA initiated proceedings in this court pursuant to a forum selection clause permitting litigation relating to the parties' contract only in the District or Circuit Court for the County of Louisa or the United States District Court for the Western District of Virginia.[1]

Notwithstanding the forum selection clause upon which Roth Display and KPA agreed, Roth moves the court to dismiss the claims against him for want of personal jurisdiction or, alternatively, for improper venue. Impugning the evidence KPA adduces, Roth disavows the signature on the facsimile to which KPA refers and insists that he neither promised to guarantee payment of Roth Display's debt nor agreed to take on the role of a surety. Rather Roth avers that he acted only as a corporate representative in his association with KPA. Roth maintains that even assuming he personally guaranteed Roth Display's debt, the agreement constitutes not a contract of suretyship but a mere

---

1. The provision in pertinent part provides: "This contract shall be deemed to have been entered into in the County of Louisa, State of Virginia. All questions concerning the validity, interpretation or performance of any of its terms or provisions or of any rights or obligations of the parties hereto, shall be resolved in the District or Circuit Court for the County of Louisa or in the U.S. District Court for the Western District of Virginia, and Buyer consents to such jurisdiction and venue and waives all objection thereto."

guaranty that lacks an express assent to a forum selection clause.[2] Thus Roth asserts that he is not bound by the forum selection clause included in the Terms and Conditions of the contract between Roth Display and KPA.

Accordingly, Roth reasons that jurisdiction must be premised on Virginia's long arm statute, Va.Code Ann. § 8.01–328.1(A) (1950 & Supp.1994), under which jurisdiction over nonresidents obtains "to the extent permissible under the Due Process Clause of the Constitution of the United States."[3] *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388, 391, *cert. denied*, 492 U.S. 921, 109 S.Ct. 3248, 106 L.Ed.2d 594 (1989). Invoking *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny, Roth denies he has the requisite "minimum contacts" with the State of Virginia to bring the court's exercise of jurisdiction within the "traditional notions of fair play and substantial justice," *id.*, mandated by due process.

Roth emphasizes the tenuous nature of his contacts with Virginia: he "owns no property in Virginia, does no business there, and has not even been to Virginia." Roth's Memorandum at 2. Additionally Roth attests that "all events conceivably forming the basis of [KPA's] claims occurred in California." *Id.* at 3. On the other hand, KPA underscores Roth's ties to the State. KPA describes Roth's " 'purposeful' . . . inject[ion of] himself into the transactions between KPA and Roth Display," KPA's Memorandum at 13, focusing on the facsimile Roth sent to Virginia; the counterproposal Roth offered regarding a revised payment schedule to which KPA assented in Virginia; the product orders Roth requested that were shipped from Virginia; and a payment from Roth's personal bank account that KPA received in Virginia.

Hence, KPA urges that even if the forum selection clause does not apply to Roth, assertion of jurisdiction by this court comports with Virginia's long arm statute and due process.

Roth and KPA advance similar arguments on the question of venue.[4]

### III.

Confronted with a challenge to personal jurisdiction under Rule 12(b)(2), where material facts are in dispute, the court has available to it either the option of disposing of the challenge by conducting a pretrial evidentiary hearing or postponing until trial a final resolution of the challenge. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989) (citing 2A Jeremy C. Moore et al., Moore's Federal Practice ¶ 12.07[2.–2] (2d ed. 1991)); *see also Market/Media Research v. Union Tribune Pub.*, 951 F.2d 102, 104–105 (6th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Dakota Industries v. Dakota Sportswear*, 946 F.2d 1384, 1387 (8th Cir.1991). While the burden of demonstrating that jurisdiction exists rests ultimately on the plaintiff, that burden is lessened considerably when a court declines to hold an evidentiary hearing on the matter, instead relying on the parties' pleadings, affidavits, and other relevant legal documents. *Bakker*, 886 F.2d at 676. Under the "lessened burden standard" the plaintiff need only make a prima facie case for jurisdiction to forestall his complaint's demise. *Id.* Dismissal is appropriate only when, "constru[ing] all relevant . . . allegations in the light most favorable to the plaintiff, assum[ing] credibility, and draw[ing] the most favorable inferences for the existence of jurisdiction," the court finds the plaintiff's stated case deficient. *Id.* Otherwise, the plaintiff's burden to prove jurisdiction by a pre-

---

**2.** A contract of suretyship is distinguishable from a guaranty in that it generally binds the surety to the instrument of his principal. Black's Law Dictionary 1441 (6th ed. 1990).

**3.** It is Roth's position that as to the allegation of fraud, under *Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 373 (4th Cir.1985), Virginia's long arm statute sets a standard more stringent than does the Due Process Clause.

**4.** Roth argues that the forum selection clause does not apply to him and that venue is improper because no significant acts or omissions upon which KPA grounds its complaint occurred in Virginia. KPA argues that the forum selection clause applies to Roth, but even if it does not apply to him, venue is proper since "a substantial part of the events or omissions giving rise to the claim occurred" in Virginia. 28 U.S.C. § 1391(a)(2).

ponderance of the evidence is reserved until trial. *Id.* at 677.

In deciding at what stage to delve into the jurisdictional conundrum, instructive is the Court's opinion in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). In *Bell* the Court entertained arguments on the issue whether a district court properly dismissed a complaint for lack of federal jurisdiction. *Id.* at 682, 66 S.Ct. at 776. In reversing the district court, the Court explained that when, as in the case before it, the existence of subject matter jurisdiction hinges on the existence of a federal cause of action "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a proper cause of action[,] ... [f]or it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* In an appeal from a district court's Rule 12(b)(1) dismissal for lack of subject matter jurisdiction, the court in *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981), reiterated the *Bell* point: "[j]udicial economy is best promoted [by an adjudication] ... on the merits [and the] refusal to treat indirect attacks on the merits as [motions to dismiss] provides ... a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim[.]" *Id.* Other courts have found this principle to apply equally to motions to dismiss where personal jurisdiction is implicated. *See, e.g., United States v. Montreal Trust Company,* 358 F.2d 239, 242 (2nd Cir. 1966), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966) (citing *Bell,* 327 U.S. 678, 66 S.Ct. 773); *Hare v. Family Publications Service, Inc.,* 334 F.Supp. 953, 959 (D.Md.1971) (expressing the desirability of avoiding "mini trials" on jurisdictional issues).

### IV.

■ For the sake of justice and expediency this court too will defer a factually intensive inquiry until the trial's commencement in the case at bar, where a ruling on jurisdiction will to a large extent translate into a ruling on the merits of the case.

Whether personal jurisdiction vests with the court in the case before it depends crucially on whether Roth must abide by the Terms and Conditions, specifically the forum selection clause, contained in Roth Display's contract with KPA. Whether liability attaches is in great part contingent upon the type of personal responsibility, if any, Roth assumed in his dealings with KPA. A resolution of both issues requires the court to ascertain whether a contract was formed between Roth and KPA, and if so, demands that the court interpret the contract and identify the intention of the contracting parties. Even if the court were to establish that the provisions of the contract between Roth Display and KPA did not govern the dispute between Roth and KPA, the court would nonetheless face the unhappy task of assessing the sufficiency of Roth's contacts with the state, *see International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, a matter inextricably tied to the type of contractual relationship, if any, that existed between Roth and KPA, and the capacity, as a corporate representative or in his person, in which Roth dealt with KPA. Such issues would be most felicitously resolved at trial.

### V.

■ Having chosen to proceed under the "lessened burden standard," all that is left for the court is to determine whether KPA has stated a prima facie case for personal jurisdiction under *Bakker.* While at trial it may very well be revealed that Roth correctly disputes this court's jurisdiction, the court finds preliminarily that it has personal jurisdiction over Roth. Resolving all factual disagreements in KPA's favor, as *Bakker* directs, 886 F.2d at 676, the court is of the view that KPA has made a prima facie showing of personal jurisdiction over Roth. The court relies on documents that KPA has submitted to the court, consisting of affidavits by KPA officials and sundry communications between KPA and Roth. Plausibly the facsimile Roth sent KPA was a contract of suretyship, a promise Roth willingly made to insure the continued flow of goods to Roth Display. Roth's subsequent assurances to and communications with KPA, if accepted by the court, conceivably amount to evidence buttressing

KPA's assertion that Roth assumed the position of a surety in the facsimile he sent. As a surety, standing in the shoes of Roth Display, Roth could be held liable under the Terms and Conditions that apply to Roth Display.

The forum selection clause included in the Terms and Conditions is presumptively a valid provision of the contract, "absent a strong showing that it should be set aside," *The Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), because "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Gordonsville Industries v. American Artos Corp.,* 549 F.Supp. 200, 205 (W.D.Va.1982). In the case at bar absent are such extreme circumstances that would preclude the court from enforcing the forum selection clause. Rather, the evidence suggests that the parties entered into a voluntarily negotiated agreement of whose Terms and Conditions Roth had actual or constructive notice.

KPA's prima facie case for personal jurisdiction is also a prima facie case for proper venue, since the contract's forum selection clause controls both personal jurisdiction and venue. Hence, the analysis the court employs in dealing with Roth's Rule 12(b)(2) motion applies with equal force to his Rule 12(b)(3) motion. The court addresses neither the question whether, absent the forum selection clause, the court could exercise personal jurisdiction under the standard of *International Shoe* and the cases succeeding it, nor the question whether the court could claim proper venue pursuant to 28 U.S.C. § 1391(a) absent the clause. It is enough to say that the questions whether the criteria of the *International Shoe* and its progeny and 28 U.S.C. § 1391(a) are met are intertwined with the merits of KPA's claim.

### VI.

To summarize, in finding that KPA has established a prima facie case for jurisdiction, the court does not rule on the merits of the case; the court leaves for trial a determination of the merits of KPA's case against Roth. The court's narrow holding is merely that KPA's allegations, taken to be true, suffice to defeat Roth's motion to dismiss. Therefore, the court overrules Roth's objections to the Magistrate Judge's ruling denying Roth's motion and upholds the Magistrate Judge's denial of Roth's motion to dismiss.