**HARDEE'S FOOD SYSTEMS, INC. and Fast Food Merchandisers, Inc., Plaintiffs,**

v.

**James W. BEARDMORE and Midland Food Systems, Inc., Defendants.**

No. 5:96–CV–508–BRI.

United States District Court, E.D. North Carolina, Western Division.

Oct. 10, 1996.

Leslie C. O'Toole, Smith, Helms, Mulliss & Moore, Raleigh, NC, for plaintiffs.

M. Keith Kapp, Maupin, Taylor, Ellis & Adams, Raleigh, NC, for defendants.

*ORDER*

BRITT, District Judge.

This case is before the court on (1) defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively, for a change of venue and (2) defendants' motion to stay all action on plaintiff Hardee's Food Systems, Inc.'s ("Hardee's") motion for preliminary injunction pending a determination on defendants' motion to dismiss.

I.  *Background*

Hardee's is a North Carolina corporation with its principal place of business in Rocky Mount, North Carolina. (Compl. ¶ 2.) Plaintiff Fast Food Merchandisers, Inc. ("FFM") is a Colorado corporation and a wholly-owned subsidiary of Hardee's with its principal place of business in Rocky Mount, North Carolina. (*Id.* ¶ 3.) Defendant James W. Beardmore ("Beardmore") is a Nebraska citizen. (Beardmore Aff. ¶ 1.) Defendant Midland Food Systems, Inc. ("Midland") is an Iowa corporation with its principal place of business in Bellevue, Nebraska. (*Id.* ¶ 2.)

Beardmore and his wife are the sole owners and shareholders of Midland. (*Id.*)

The present dispute arises out of fourteen license agreements between Hardee's (as licensor) on the one hand and Beardmore and Midland (as licensees) on the other. The franchise agreements allow the licensees to operate Hardee's fast service restaurants in Iowa and Nebraska. (Compl. ¶¶ 12–41.)

When defendants defaulted on various obligations in the license agreements, Hardee's notified defendants that the license agreements were terminated. (*Id.* ¶ 46.) Plaintiffs then initiated this lawsuit alleging trademark and service mark infringement, unfair competition, and breach of contract. Subsequently, defendants filed the instant motions.

II.  *Discussion*

A.  *Personal Jurisdiction*

When personal jurisdiction is challenged in a motion pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). If the court decides the 12(b)(2) motion without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal jurisdiction. *Id.* In deciding whether the plaintiff has proved his *prima facie* case, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Id.*

When evaluating personal jurisdiction obtained under a state long-arm statute, the court engages in a two-step analysis. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). First, the court must determine whether the long-arm statute authorizes the exercise of jurisdiction. *Id.* If so, the court must consider whether the exercise of jurisdiction comports with due process. *Id.* However, because the North Carolina long-arm statute allows the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629,

630–31 (1977), the normal two-step inquiry merges into one. *Ellicott*, 995 F.2d at 477.

■ "In determining whether the exercise of personal jurisdiction comports with due process, 'the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum'...." *Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir.1989) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).

■ The requisite contacts may be established by way of general or specific jurisdiction. *Felch v. Transportes Lar–Mex Sa De CV*, 92 F.3d 320, 324 (5th Cir.1996).

> Specific jurisdiction involves the exercise of personal jurisdiction over the defendant in an action which arises out of the defendant's contact with the forum. Where a court seeks to assert specific jurisdiction over a nonresident corporate defendant, the "fair warning" requirement inherent in due process still demands that the defendant "purposely directed" its activities at the forum. General jurisdiction, by contrast, involves the exercise of personal jurisdiction over a defendant in an action which does not arise out of a defendant's contact with the forum. In such a case, the defendant's contacts with the forum must be "continuous and systematic" in order to satisfy the due process clause.

*Federal Ins.*, 886 F.2d at 660 (citations omitted).

■ "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quotation omitted). These factors include the burden on the defendant, the forum's state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 477, 105 S.Ct. at 2184–85.

The court has been unable to find, and the parties did not offer, a published Fourth Circuit decision directly on point. Recognizing that unpublished opinions of the Fourth Circuit are not binding, the court nevertheless finds noteworthy *Econo Lodges International, Inc. v. Peck*, No. 93–1519, 1993 WL 369262 (4th Cir. Sept. 22, 1993). In that case, plaintiff Econo Lodge and defendants John and Susie Peck entered into a franchise agreement under which the Pecks operated their motel in Tallahassee, Florida as an Econo Lodge Motel. The agreement stated that Econo Lodge is a Virginia corporation with its principal place of business in Charlotte, North Carolina. After disagreements occurred between the parties, Econo Lodge filed suit in the United States District Court for the Western District of North Carolina. On appeal, the Fourth Circuit addressed the issue of personal jurisdiction. It held:

> We find the franchise agreement created a substantial connection to North Carolina and was sufficient to support jurisdiction over the Pecks. The agreement specifically states that Econo Lodge's principal place of business is Charlotte. Pursuant to the agreement, the Pecks paid monthly royalty and advertising fees to Econo Lodge and submitted regular financial reports to Econo Lodge. Econo Lodge provided the Pecks with marketing and advertising materials, advertising assistance, and participation in the computer reservation center. The Pecks failed to present evidence which would refute that these services and transactions occurred in Charlotte, North Carolina, the expressed principal place of business for Econo Lodge.... We find that the Pecks have purposefully availed themselves of the privilege of conducting business in North Carolina....

*Id.* at *2.

Also significant is the Supreme Court's decision in *Burger King*. In that case, defendant entered into a twenty-year franchise agreement with Burger King, a Florida corporation, to operate a restaurant in Michigan. The agreement provided that it was

governed by Florida law and called for payments of all required fees and forwarding of all relevant notices to Burger King's Miami headquarters. The Miami headquarters set policy and worked directly with its franchisees to resolve major problems. Day-to-day monitoring of franchisees, however, was conducted through a district office in Michigan. When defendant failed to make monthly payments, Burger King terminated the franchise and ordered defendant to vacate the premises. Defendant refused and continued to occupy the facility and operate it as a Burger King restaurant. Burger King then brought suit in federal district court in Florida. Defendant claimed the Florida court lacked personal jurisdiction over him. The Supreme Court disagreed:

> [T]his franchise dispute grew directly out of a contract which had a *substantial* connection with [Florida]. Eschewing the option of operating an independent local enterprise, [defendant] deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of [defendants's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated. [Defendant's] refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida. For these reasons it was,

at the very least, presumptively reasonable for [defendant] to be called to account there for such injuries.

*Burger King,* 471 U.S. at 479–80, 105 S.Ct. at 2186 (quotations omitted) (citations omitted). As to the choice of law provision in the franchise agreement, the Court stated: "Although such a provision standing alone would be insufficient to confer jurisdiction, we believe that, when combined with the 20-year interdependent relationship [defendant] established with Burger King's Miami headquarters, it reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* at 482, 105 S.Ct. at 2187.

■ In this case, defendants assert that their connections with North Carolina are limited to having made royalty payments to Hardee's and having purchased supplies and other products from FFM. (Beardmore Aff. ¶ 6.) Beardmore states that neither he nor Midland maintain an office in North Carolina, have employees in the state, or conduct business, advertise, or sell any products or merchandise in the state. (*Id.* ¶ 7.)[1]

Notwithstanding the above, defendants' contacts with North Carolina are not so isolated or attenuated that an exercise of personal jurisdiction would offend due process. *See, e.g., Chung v. NANA Dev. Corp.,* 783 F.2d 1124 (4th Cir.) (defendant's single contract with Virginia resident was "isolated" and "attenuated" and could not satisfy due process), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986). Rather, defendants "reach[ed] out" beyond their home states and "create[d] continuing relationships and obligations" with plaintiffs in North Carolina. *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). Beardmore entered into not one but fourteen separate franchise agreements with Hardee's. Midland is the assignee of

---

1. In Beardmore's first affidavit, he stated that he only visited North Carolina on two occasions, neither of which were for the purposes of conducting business in the state. (Beardmore Aff. ¶ 6.) Nancy Strickland's declaration, however, is to the contrary. It states that she recalls that Beardmore, on behalf of himself and Midland, attended a business meeting at Hardee's corporate offices in Rocky Mount, North Carolina. (Strickland Decl. ¶ 4.) According to Strickland, the meeting pertained to issues in the business relationship between Hardee's and FFM on the one hand and Beardmore and Midland on the other. (*Id.*) In a second affidavit, Beardmore admits that on two occasions he visited Hardee's headquarters in Rocky Mount, North Carolina. (Beardmore Supp.Aff. at p. 3.)

seven of the agreements. The agreements contemplate carefully structured relationships that were to last twenty years. (*See, e.g.,* Compl.Att. 14 ¶ II.A.) The first paragraph of the agreements specifically states that Hardee's is a North Carolina Corporation with its principal place of business in Rocky Mount, North Carolina. (*See, e.g., id.* at p. 2.) The agreements further state that they "take[ ] effect upon [their] acceptance and execution by LICENSOR in North Carolina," and that they "shall be interpreted and construed under the laws [of North Carolina], which laws shall prevail in the event of any conflict of law." (*See, e.g., id.* ¶ XXI.A.) The agreements provide that the licensee is to pay Hardee's a monthly royalty and service fee. (*See, e.g., id.* at p. 1.) Except for when defendants were in default, they complied with the royalty provision and defendants' payments were received at Hardee's Treasury Department in Rocky Mount, North Carolina. (Strickland Aff. ¶ 2.) Defendants were also required to make monthly payments to Hardee's National Advertising Fund and to send these payments to a post office box in Charlotte, North Carolina. (*Id.* ¶ 3.) Except when defendants were in default, they sent the payments to the post office box in Charlotte. (*Id.*) Finally, defendants have purchased food, equipment, and other items from FFM for the past twelve years. (Ziebell Decl. ¶ 2.) FFM sold major equipment items such as ice machines, fryers, and grills to defendants and the equipment was shipped to defendants from North Carolina. (*Id.*) Except when defendants were in default, they have continuously paid FFM for these goods by check mailed to FFM in North Carolina. (*Id.* ¶ 3.) Under these circumstances, Beardmore's argument that he had little contact with Hardee's or FMM in North Carolina and that he primarily dealt with corporate representatives located outside of North Carolina is unavailing.

Defendants have not argued that any other factors establish that an assertion of jurisdiction in this case would not comport with fair play and substantial justice. As such, they have not refuted plaintiffs' *prima facie* case of personal jurisdiction. *See* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067 at pp. 301–302 (2nd ed.

1987) ("[T]he burden of showing minimum contacts . . . lie[s] with the plaintiff, but . . . once a prima facie showing is made, it becomes the defendant's burden to convince the court that the assertion of jurisdiction would be unreasonable.").

For the reasons discussed above, the court finds that it has personal jurisdiction over the defendants.

### B. *Venue*

■ Alternatively, defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. Plaintiffs assert that venue is proper pursuant to 28 U.S.C. § 1391. Since this action is not founded solely on diversity, the relevant provision of § 1391 is subsection (b). Subsection (b) provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (1996). Under the new "substantial part of the events or omissions" language in § 1391(b)(2), there may be several districts that qualify for venue purposes. As the commentary to § 1391 states:

The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in B were more substantial, or even the most substantial.

28 U.S.C. § 1391, Commentary on 1988 and 1990 Revisions of Section 1391 at p. 9.

In this case, some of the same facts that establish personal jurisdiction also establish that venue is proper in this district. *See generally id.* at p. 10 ("The 'events . . . oc-

curred' idea is what longarm personal jurisdiction is based on . . . ."); *Jarrett v. State of North Carolina*, 868 F.Supp. 155, 159 (D.S.C. 1994) ("The 1990 amendments to 28 U.S.C. § 1391 were enacted to clarify the test for venue and to tie-in the test for venue with the standard for establishing personal jurisdiction in a given forum.") (citations omitted). The agreements took effect upon their acceptance and execution by Hardee's in North Carolina. (*See, e.g.,* Compl.Att. 14 ¶ XXI.A.) It is defendants' default on these agreements that is at the bottom of all of plaintiffs' claims. Specifically, defendants' failure to pay Hardee's a monthly royalty fee to Hardee's Treasury Department in Rocky Mount, North Carolina led Hardee's to terminate the agreement. (Compl. ¶ 45.) Although it appears that events or omissions giving rise to this action may have occurred in greater numbers in another district, since substantial events and omissions also occurred in this district, venue is proper.

## C.  *Transfer*

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1993).

Defendants argue that pursuant to 28 U.S.C. § 1404(a), the court should transfer this action to the United States District Court for the Southern District of Iowa.

In a motion to transfer under § 1404(a), plaintiff's choice of forum is accorded great weight, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981), and defendant bears a heavy burden of showing that the balance of interests weighs strongly in his favor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Additionally, a court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 841 F.Supp. 719, 721 (M.D.N.C.1993).

Defendants seem to argue that transfer should be ordered on grounds of convenience of the witnesses and access to proof. As to witnesses, however, defendants do not identify their key witnesses and indicate where they reside. All defendants state regarding their witnesses is that defendants may assert claims against Hardee's or FFM that would be established with witnesses from Iowa or Nebraska. This is not sufficient. *See Aetna Casualty & Sur. Co. v. Singer–General Precision, Inc.*, 323 F.Supp. 1141, 1144 (D.C.Del. 1971) (when inconvenience to witnesses is alleged as grounds for transfer, information should be put in the record as to how many witnesses are involved and how far away they are from the transferee court as compared to the transferor court). Moreover, Hardee's has identified three North Carolina witnesses and has indicated to what matters their testimony would pertain.

Regarding records, defendants argue that their evidence consists of voluminous records documenting gross receipts and expenditures. Since defendants do not state where these records are maintained, their argument cannot succeed on these grounds. *See American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 264 (W.D.Mo.1980) (party urging location of records and documents as a basis for transfer must show location and difficulty of transporting records). Additionally, while plaintiffs do not argue that their records are voluminous, they do argue that the vast majority of records of payment, invoices, and other financial information pertaining to the termination of defendants' license agreements are located in North Carolina.

As such, defendants have not shown that the factors to be considered in a transfer decision weigh heavily—or even at all—in their favor.

For the reasons discussed above, defendants' motion to dismiss or alternatively for transfer is DENIED. Defendants' motion to stay is DENIED as moot.