**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MASSELLI & LANE, PC, a Virginia
corporation,
Plaintiff-Appellant,

v.

MILLER & SCHUH, PA, a Florida
corporation,
Defendant-Appellee.

and

LARRY D. BROWN, an individual

resident of the State of Georgia;
ARKCO UNDERWRITERS,
INCORPORATED, a terminated Florida
corporation Suggestion of
Bankruptcy filed 9/23/98; AANCO
UNDERWRITERS, INCORPORATED, a
terminated Florida corporation
Suggestion of Bankruptcy filed
10/1/98,
Defendants.

No. 99-2440

Appeal from the United States District Court
for the District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-98-864-A)

Argued: May 3, 2000

Decided: May 30, 2000

Before WIDENER and MOTZ, Circuit Judges,
and Frank W. BULLOCK, Jr., United States District Judge
for the Middle District of North Carolina,
sitting by designation.

Remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Charles Masselli, MASSELLI & LANE, P.C., Arlington, Virginia, for Appellant. Teri Louise DiGiulian, BEDZOW, KORN, BROWN, MILLER & ZEMEL, P.A., Aventura, Florida, for Appellee. **ON BRIEF:** William C. Lane, MASSELLI & LANE, P.C., Arlington, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A Virginia law firm, Masselli & Lane, P.C. (M&L), brought this action based on diversity of citizenship alleging inter alia that a Florida law firm, Miller & Schuh, P.A., was liable to M&L for breach of contract, quantum meruit, fraud, and tortious interference with contract. The district court granted Miller & Schuh's motion to dismiss for lack of personal jurisdiction. For the reasons that follow, we remand for further findings.

I.

In a prior proceeding that forms the basis for the instant case the International Insurance Company sued a number of persons in Florida seeking a declaratory judgment that its decision not to provide an insurance defense to them was valid. Miller & Schuh represented two business entities named as defendants in that action--Aanco Underwriters and Arkco Underwriters; Larry Brown was the president of both of these entities (but he was not named in his individual capacity

2

in the International action). The other defendants included Charles Amos, the Estate of Joan Amos, and John Fessenden.

In the past, Brown had retained the legal services of M&L for matters related to other business ventures. Based on this previous relationship, Brown initially urged M&L to assist Amos in his criminal appeal. Later, Brown urged M&L to represent Amos and his wife's estate in the International action, and he agreed to sign a conflict-of-interest waiver because Amos's interests in that litigation were potentially divergent from those of Aanco and Arkco. Brown then negotiated a fee agreement with M&L for its representation of Aanco and Arkco as well, indicating to M&L that he had discharged Miller & Schuh.

Brown's conduct triggered a series of discussions and other interactions between Miller & Schuh and Brown, M&L and Brown, and between the two law firms in order to sort out the legal effect of the various agreements entered into by Brown on behalf of Aanco and Arkco and to discuss the conflict-of-interest questions posed by M&L's representation of certain parties to the International lawsuit. These interactions ultimately resulted in the execution of a Pooling Agreement, which established how any recovery, through settlement with or judgment against International, would be shared among the defendants. The Pooling Agreement also specified that attorneys' fees were controlled by each law firm's separate fee agreements with its clients--M&L with Amos and Fessenden, and Miller & Schuh with Aanco and Arkco.

M&L maintains that "[d]uring the period from January 1, 1998 through June 8, 1998, [it] received numerous phone calls, faxes and letters at [the firm's] office in Virginia from the principals at Miller & Schuh." M&L also contends that four letters sent by Miller & Schuh to M&L establish the minimum contacts necessary to conclude that Miller & Schuh purposefully availed itself of the benefits and privileges of transacting business in Virginia.

II.

A plaintiff must prove the grounds for personal jurisdiction by a preponderance of the evidence. See, e.g., Mylan Labs., Inc. v. Akzo,

3

N.V., 2 F.3d 56, 60 (4th Cir. 1993) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing," Combs, 886 F.2d at 676, "[y]et when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., 2 F.3d at 60. The pleadings, affidavits, and other supporting documents presented to the court are construed in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor. Id. In doing so, however, the court need not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The district court's application of the law to these facts is reviewed de novo. Mylan Labs., 2 F.3d at 60.

A two-pronged analysis is used in determining issues of personal jurisdiction. A court must first determine whether the forum state's long-arm statute confers jurisdiction over the non-resident defendant. See Mylan Labs., 2 F.3d at 60. Assuming the requirements of the forum state's long-arm statute have been satisfied, the court must next determine whether the exercise of personal jurisdiction over the non-resident defendant comports with due process. Id. The Virginia Supreme Court has interpreted the long-arm statute to confer jurisdiction "over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause of the Constitution of the United States." Nan Ya Plastics Corp. U.S.A. v. DeSantis, 377 S.E.2d 388, 391 (Va. 1989). Thus, the statutory and constitutional inquires merge, see Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 628 (4th Cir. 1997), and we focus on the nonresident defendant's contacts with the forum state.

"In Burger King Corp. v. Rudzewicz, [471 U.S. 462 (1985),] the Supreme Court reaffirmed the general rule that specific jurisdiction requires a showing by the plaintiff that (1) the nonresident defendant has purposefully established significant (i.e. , not `random, fortuitous or attenuated') contact with the forum state; and (2) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. If the plaintiff can make that showing, the defendant will

4

have the burden of showing, from the balance of interest factors, that the state's exercise of specific jurisdiction would be unfair." 16 Moore's Federal Practice § 108.42[1] (3d ed. 1999).

III.

Masselli & Lane asserts two bases for its claim that a federal court in Virginia has personal jurisdiction over Miller & Schuh in this case.

Initially, M&L relies on the first provision of Virginia's long-arm statute, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in [Virginia]." Va. Code Ann. § 8.01-328.1(1) (Michie 1992 & Supp. 1999). M&L correctly asserts that Virginia's long-arm statute is "a single act statute," i.e., one business transaction in Virginia may be sufficient as a basis for personal jurisdiction, even if substantially all contract obligations are performed outside of the state. See Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc., 774 F. Supp. 393, 397 (E.D. Va. 1991) (citing I.T. Sales, Inc. v. Dry, 278 S.E.2d 789 (Va. 1981); John G. Kolbe, Inc. v. Chromodern Chair Co., 180 S.E.2d 664, 667 (Va. 1971)). M&L contends that the negotiation and implementation of the Pooling Agreement constitute Miller & Schuh's "purposeful activity" of transacting business in Virginia.

If personal jurisdiction is allegedly based on a single contact, the factors commonly examined by courts to determine whether business has indeed been transacted within the state include: (1) where the contracting and negotiations occurred; (2) who initiated the contact; (3) the extent of the communication; and (4) where the contractual obligations were to be performed. See, e.g., Affinity Memory & Micro, Inc. v. K & Q Enters., 20 F. Supp. 2d 948, 952 (E.D. Va. 1998). Unilateral activity by the plaintiff or third parties cannot satisfy the minimum contacts requirement. See Burger King, 471 U.S. at 474 (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The crucial inquiry involves whether the contacts suggest that the nonresident defendant purposefully availed himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253 (citing International Shoe, 326 U.S. at 319); see also Burger King, 471 U.S. at 476. When a case

5

involves legal representation by an out-of-state law firm, courts emphasize the importance of the second factor--who initiated the contact. See Sawtelle v. Farrell, 70 F.3d 1381 (1st cir. 1995); English & Smith v. Metzger, 901 F.3d 36 (4th Cir. 1990); Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987).

The parties disagree as to some facts and, more importantly, as to what inferences can properly be drawn from the facts. Critically, they disagree as to who initiated contact, the extent and nature of communications between them, what the Pooling Agreement requires, and where and by whom obligations under that Agreement were performed. Unfortunately, the district court did not issue a written opinion or render any oral findings of fact on these issues. We remand so that the district judge can do so.

The district court also failed to explain its rejection of M&L's alternative argument. That argument is based on the portion of Virginia's long-arm statute that provides for personal jurisdiction when an individual "acts directly or by an agent . . . [c]ausing tortious injury in [Virginia] by an act or omission outside[Virginia] if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Virginia]." Va. Code Ann. § 8.01-328.1(4)n (Michie 1992 & Supp. 1999).

M&L contends that Miller & Schuh engaged in a "persistent course of conduct" through its ongoing communication with M&L, the sharing of files, and joint authorship of pleadings and motions, and that when Aanco and Arkco's settlement funds from the International action were paid into Miller & Schuh's trust account and disbursed, Miller & Schuh committed tortious interference with M&L's rights under the Pooling Agreement. Neither party devotes much attention to this argument, and the district court made no findings as to why these activities do not constitute a "persistent course of conduct" subjecting Miller & Schuh to personal jurisdiction in Virginia. M&L maintains that Miller & Schuh were able to settle with International on behalf of Aanco and Arkco based in large measure on the work performed by M&L in preparation for trial. If these allegations are true, Miller & Schuh may have "derive[d] substantial revenue from . . . [legal] services rendered in Virginia." To be sure, Miller & Schuh

6

counters these contentions. The district court undoubtedly concluded that Miller & Schuh's evidence was more compelling, but the court's lack of findings makes our review of this conclusion difficult. Accordingly, we also remand this issue to the district court for appropriate findings.

IV.

In sum, without in any way intimating our views on the merits, we remand the case to the district court for further proceedings consistent with this opinion.

REMANDED