William PARHAM, Plaintiff,

v.

WEAVE CORPORATION, Defendant.

No. CIV. 1:03CV00987.

United States District Court,
M.D. North Carolina.

June 17, 2004.

J. David James, Smith James Rowlett & Cohen, Greensboro, NC, for Plaintiff.

Jack B. Bayliss, Jr., Carruthers & Roth, P.A., Greensboro, NC, Alexander H. Gardner, Tofel & Partners, P.C., New York, NY, for Defendant.

### MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff William Parham ("Parham") has brought this action against Defendant Weave Corporation ("Weave") alleging a breach of the severance agreement executed between the parties. Weave removed the case to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Pending before the court is Weave's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the United States District Court for the District of New Jersey. Also before the court is Parham's motion to strike Weave's reply brief and supporting affidavits. For the follow-

ing reasons, the court will grant Weave's motion to transfer this action to the District of New Jersey. Parham's motion to strike will be denied.

## FACTS

Weave sells upholstery, drapery, and apparel textiles for the furniture and decorative fabric markets. Parham was the Executive Vice President of Weave from 1994 until his termination in 2003. During this period, Parham worked in the company's Hackensack, New Jersey office. Parham also worked periodically in Weave's New York City and Denver, Pennsylvania facilities.

Before joining Weave, Parham lived in Guilford County, North Carolina. Though he acquired an apartment in New York City to facilitate his employment, Parham maintained his North Carolina residence throughout his tenure with Weave. He continued to vote, pay taxes, and retain a driver's license in North Carolina. He traveled to his Guilford County home two or three weekends per month. Subsequent to his termination and the filing of this lawsuit, Parham sold his New York City apartment and returned to North Carolina.

Weave is not licensed to do business in North Carolina and does not have an office or employees in the state. Weave's contacts with North Carolina include the sale of its products through an "independent sales agent," William J. Pines, Inc. ("Pines"). Pines sells Weave products on commission in a six-state territory. Weave does not control the sales efforts of Pines, and Pines is not authorized to make representations on Weave's behalf.

Pines maintains a showroom in High Point, North Carolina, that displays Weave's products as well as products from other manufacturers. Weave pays Pines $12,000.00 per year for showroom and exhibit expenses. Weave's name is listed on the building directory independent of Pines, and Weave's name and a local telephone number are listed in a High Point merchant directory.[1]

Weave receives a substantial amount of business from North Carolina customers. Sixteen percent, or approximately four million dollars, of Weave's total sales originate in North Carolina. Weave also sells $100,000.00 worth of "seconds"[2] to a Pines affiliate in North Carolina.

Weave's contacts with North Carolina also consist of purchases that facilitate the manufacture of its goods. Weave buys approximately 35% of the yarn it uses from North Carolina. Weave contracts with North Carolina dyeing companies to treat the undyed yarn the company purchases. The "washed finish" on many of Weave's fabrics is done in North Carolina. Other types of finishing, such as teflon coating, also are performed by North Carolina companies. Weave has submitted affidavits asserting that these purchases result from solicitations from North Carolina companies to Weave's Pennsylvania office, not from "buying trips" to North Carolina. Weave also emphasizes that the decision to "finish" a fabric is controlled by the customer, not Weave.

Finally, Weave's contacts with North Carolina involve employee attendance at furniture and fabric shows held in the state four times each year. Weave's president, vice president of marketing, and three or four designers attend the International Furniture Market, a twice-yearly showcase of new furniture designs, in High

---

1. Weave asserts that this telephone number belongs to Pines' showroom, but this information is not included in the directory.

2. "Seconds" are textiles that are not top quality.

Point, North Carolina. Weave is also represented at "Showtime," a biannual High Point fabric show occurring three months before each Furniture Market show.[3] The parties dispute whether Weave employees also visit North Carolina to meet with finishing companies and customers.[4]

## DISCUSSION

Weave has moved to dismiss Parham's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). To survive Weave's motion, Parham must prove that jurisdiction is proper by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). When the court decides the issue based on the pleadings, affidavits, and legal memoranda, the plaintiff must make a *prima facie* showing that personal jurisdiction exists. *Id.* In determining whether the plaintiff has met his burden, the court views the relevant documents in the light most favorable to the plaintiff. *Id.*

A federal court may exercise jurisdiction over a non-resident defendant in a diversity action if the state court where it sits could assert jurisdiction. *See* Fed.R.Civ.P. 4(k)(1)(A). Personal jurisdiction is proper if two requirements are met. First, the state must authorize jurisdiction under its long-arm statute, and, second, the exercise of jurisdiction must be consistent with due process under the Fourteenth Amendment. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993).

The applicable provision of the North Carolina long-arm statute confers personal jurisdiction over persons engaged in "substantial activity" within the state, regardless of whether the cause of action arose in North Carolina. N.C. Gen.Stat. § 1-75.4(1)(d). This provision is intended to authorize jurisdiction to the full extent permitted by due process. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977). Accordingly, the focus of the court's analysis is whether Weave, a non-resident defendant, has "certain minimum contacts with [North Carolina] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted). The minimum contacts inquiry is met when the defendant has purposefully directed his activity toward the forum state, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The court determines whether personal jurisdiction is proper on a case-by-case basis, considering the amount and kind of the defendant's activities in the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Here, Parham's cause of action does not arise from Weave's contacts or activity in North Carolina. As a result, Weave is subject to suit in this state if the court can exercise "general jurisdiction" over Weave.[5] General

---

**3.** Weave's president states that he does not attend "Showtime," but he has not specifically contested Parham's claim that other Weave employees attend.

**4.** In addition, Parham claims that during his tenure at Weave the company leased a tractor trailer that transported raw materials and fabrics between North Carolina and Weave's

Pennsylvania manufacturing facility on a weekly basis. Weave disputes this claim. When this case was filed, Weave used a common carrier for its transportation needs and continues to do so.

**5.** There are two types of personal jurisdiction. General jurisdiction is the exercise of jurisdiction over the defendant when the suit does

jurisdiction exists if Weave's contacts with North Carolina are "continuous and systematic." *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir.1989). "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough" to demonstrate general jurisdiction. *Int'l Shoe*, 326 U.S. at 317, 66 S.Ct. 154. The court may exercise this type of jurisdiction over a non-resident corporate defendant only when "continuous corporate operation within a state [is] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318, 66 S.Ct. 154. Thus, the relevant inquiry is whether Weave's sales, purchases, and other conduct in North Carolina are sufficiently frequent and regular to subject the company to suit in this forum.

Weave contends that its contacts with North Carolina are "fortuitous and random." (Def.'s Reply Mem. Supp. Mot. Dismiss Lack of Jurisdiction or Alternatively Change Venue at 3.) The company emphasizes the fact that it has no employees, offices, or license to do business in North Carolina. Though Weave has made more than four million dollars, or 16% of its total sales, from customers in North Carolina, Weave does not believe it has substantial contacts with North Carolina because the sales are made through an "independent sales agent" working on commission. Weave also dismisses the fact that it purchases a significant portion of its raw materials and manufacturing services from North Carolina companies. Weave asserts that these contacts are made by North Carolina companies soliciting sales at Weave's Pennsylvania office.

The court recognizes that "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). It is also well settled that "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction." *Nichols*, 991 F.2d at 1200. However, Weave arguably has "purposefully directed" its activities at North Carolina by contributing yearly to the showroom where its products are sold, listing its name and a local phone number in a High Point merchant directory, and sending Weave employees to North Carolina at least four times per year to attend major furniture and fabric shows. In this manner Weave has "acted, directly or indirectly, in a manner through which it derived benefits from activities conducted in a distant state." *S. Case, Inc. v. Mgmt. Recruiters Int'l, Inc.*, 544 F.Supp. 403, 407 (E.D.N.C.1982) (finding jurisdiction over non-resident corporation that had a contractual relationship with three independent franchisees in North Carolina, sent representatives to visit the franchises, and received considerable royalties from the franchises); *but see Nichols*, 991 F.2d at 1200 (affirming district court refusal to exercise general jurisdiction over non-resident defendant who had 17–21 promotional representatives in the forum state, held regional and national meetings in the forum state, and derived two percent of its sales and approximately one percent of its purchases from the forum state).

■ Given the quantity and quality of Weave's dealings in North Carolina, the court is inclined to believe that it could

---

not arise out of defendant's activities in the forum state. Specific jurisdiction is the exercise of jurisdiction over the defendant when the cause of action arises from defendant's

contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

legitimately exercise jurisdiction. However, regardless of whether jurisdiction is proper in North Carolina, transfer to the District of New Jersey is appropriate in this instance. Pursuant to 28 U.S.C. § 1404(a), a court with proper jurisdiction and venue may transfer a case to another district where it might have been brought if transfer serves "the convenience of parties and witnesses, [and] the interest of justice." 28 U.S.C. § 1404(a). A court that lacks personal jurisdiction or venue over a defendant may transfer an action pursuant to 28 U.S.C. § 1406(a) if transfer serves the interests of justice. *See* 28 U.S.C. § 1406(a); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (finding that section 1406(a) permitted transfer whether the transferor court had personal jurisdiction or not); *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.1988) (adopting rule that section 1406(a) allows a court to transfer a case "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district").

While the plaintiff's choice of forum is accorded substantial weight, *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 260 (4th Cir.2002), the deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action. *See GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999). Here, North Carolina bears little relation to the parties' dispute. The contract at issue was performed and terminated in New Jersey and is governed by New Jersey law. Company records and witnesses are located in New Jersey. North Carolina is merely Parham's current residence and was his residence before joining Weave. Though Parham claims that adjudicating in New Jersey will be inconvenient for him, Parham already has retained New Jersey counsel to represent his interests.[6]

In light of these facts, the court finds that transfer would comport with "the convenience of the witnesses and those public-interest factors of systematic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *see Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F.Supp. 519, 527 (M.D.N.C.1996) (citing factors pertinent to this analysis such as plaintiff's choice of forum; ease of access to sources of proof; the cost of obtaining and availability of witnesses; practical problems that make a trial easy, expeditious, or expensive; the interest in having local controversies decided at home; and the court's familiarity with the applicable law). The District of New Jersey appears to be a forum in which this case originally could have been brought,[7] and jurisdiction in that district is

---

**6.** Parham has filed a motion to strike Weave's reply brief. Parham's primary contention is that Weave's reply brief, which contains affidavits naming pertinent witnesses residing in New Jersey, unfairly prejudices him by depriving him of an opportunity to rebut with a list of North Carolina witnesses and documents. The reply affidavit of Weave's president and chief executive officer states that relevant records and witnesses, including company employees and accountants, reside in New Jersey. This is not uncommon when a defendant's corporate headquarters is located out-of-state and is a factor the court would consider even without the supplemental affidavit. The facts contained in the reply affidavits are not determinative in the court's decision to transfer this case. Therefore, Parham's motion to strike the reply brief will be denied.

**7.** The District of New Jersey, where Weave has its principal place of business and Parham worked pursuant to the contract at issue, could satisfy the requirements of personal jurisdiction, subject matter jurisdiction, and venue. *See* 28 U.S.C. § 1332; § 1391(a).

more certain than jurisdiction in North Carolina. Transfer will advance the interests of the parties and the interests of justice better than dismissal and refiling or reversal and retrial. Therefore, pursuant to 28 U.S.C. § 1404(a), the court will transfer this action to the United States District Court for the District of New Jersey. *See Tyler v. Gaines Motor Lines, Inc.,* 245 F.Supp.2d 730, 733 (D.Md.2003) (considering the doubtfulness of jurisdiction in forum court in decision to transfer venue).

## CONCLUSION

For the foregoing reasons, the court will deny Weave's motion to dismiss. However, the court will grant Weave's motion to transfer this action pursuant to 28 U.S.C. § 1404(a). The court will deny Parham's motion to strike Weave's reply brief and supporting affidavits.