### TRIAD INTERNATIONAL MAINTENANCE CORPORATION, Plaintiff,

v.

### AIM AVIATION, INC., Defendant.

### No. 1:05CV00704.

United States District Court, M.D. North Carolina.

July 10, 2006.

---

Darrell A. Fruth, Derek J. Allen, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, for Plaintiff.

Michael John Allen, Carruthers & Roth, P.A., Greensboro, NC, Joseph E. Shickich, Jr., Seattle, WA, for Defendant.

### ORDER

BEATTY, District Judge.

On June 7, 2006, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No objections were filed within the time limits prescribed by Section 636.

Therefore, the Court need not make a *de novo* review and the Magistrate Judge's Recommendation is hereby adopted.

**IT IS THEREFORE ORDERED** that defendant's motion to transfer this case to the Western District of Washington (docket no. 16) be, and the same hereby is, denied.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

#### I. *Statement of the Case and Facts*

This case is before the Court on defendant's motion to transfer the case to the Western District of Washington under 28 U.S.C. § 1404(a). The basic facts of the case, as alleged in the pleadings and presented by the parties in their briefing of the motion to transfer are as follows.

Plaintiff is a Delaware corporation with its main offices and principal place of business located in Greensboro, North Carolina. It performs maintenance and service on aircraft. Defendant is a Washington corporation with its principal place of business in that state. It provides interior components for aircraft.

In 2004, plaintiff was to perform the work on a project to refurbish planes for Alitalia. After some preliminary negotiations, plaintiff issued four purchase orders to defendant for about two million dollars worth of components for the project. It also paid a deposit of $564,000 to defendant. Unfortunately, Alitalia soon placed a hold on the program and then cancelled the project. Plaintiff states that it notified defendant of the hold and then the cancellation so that defendant would not continue to work on the project.

Following the cancellation of the project, defendant sent plaintiff a cancellation claim for $516,901. Plaintiff reviewed the claim and determined that it would agree to pay only $349,970 of the claim. It also sought the parts and materials that defendant had already purchased or completed. Thereafter, defendant continued to insist that it be paid for the full amount of its cancellation claim and for shipping the parts and materials. It retained both the materials and plaintiff's $564,000 deposit as the dispute lingered.

When the parties were not able to amicably resolve their dispute, plaintiff filed suit in the state courts of North Carolina. It raised claims for breach of contract, conversion, unjust enrichment, and unfair and deceptive trade practices. Defendant removed the case to this Court on the basis of diversity jurisdiction and has now moved to have the case transferred to the Western District of Washington.

#### II. *Discussion*

There is agreement between the parties concerning the law governing defendant's motion to transfer. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The parties agree that the case could have been brought in the West-

ern District of Washington. Therefore, the Court must decide only whether it is in the interest of justice to transfer the case there.

 The burden is on defendant to show that transfer is appropriate. *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446, 451 (W.D.N.C.1989). This Court has previously held that the factors to be considered in making this determination are:

(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 527 (M.D.N.C.1996)(citing *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,* 719 F.Supp. 446, 450–51 (W.D.N.C.1989)).

*Republic Mortg. Ins. Co. v. Brightware, Inc.,* 35 F.Supp.2d 482 (M.D.N.C.1999). "The court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another." *Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.,* 933 F.Supp. 507, 513 (M.D.N.C.1996)(citing *Tools USA and Equipment Co. v. Champ Frame Straight-*

*ening Equipment, Inc.,* 841 F.Supp. 719, 721 (M.D.N.C.1993)).

The list of factors is nonexclusive, but the parties have not proposed any additional factors. Further, defendant concedes that several factors are either neutral or inapplicable. Specifically, it states that the third factor (availability of compulsory process), sixth factor (advantage and obstacles to a fair trial), seventh factor (other practical problems affecting a trial), ninth factor (localized settlement of a controversy), and eleventh factor (avoiding problems with conflicts of laws) do not weigh significantly in one direction or the other on the issue of transfer. The Court will discuss only the remaining factors.

*A. Plaintiff's Choice of Forum*

 As stated previously, plaintiff's choice of forum is often the most important factor in a transfer of venue analysis and it is rarely disturbed. In the present case, plaintiff chose North Carolina as its forum. Still, defendant argues that this case should be the exception to the rule because North Carolina has little relation to the causes of action raised in the complaint.

 Defendant is correct that the weight of a plaintiff's choice of forum can be lessened where there is little connection between the complaint and the chosen forum. *See, e.g., Parham v. Weave Corp.,* 323 F.Supp.2d 670 (M.D.N.C.2004); *Glamorgan Coal Corp. v. Ratners Group, PLC,* 854 F.Supp. 436, 438 (W.D.Va.1993). However, this principle is inapplicable to the present case because there is a significant connection between North Carolina and the plaintiff and the contract that was formed between the parties. Plaintiff's main offices are located here. More importantly, the materials it intended to purchase under the contract were ordered from here and were to be shipped here. Finally, its documents related to the dispute and the employees that made the

decisions on the cancellation and the payment of the cancellation claim are located here.

This stands in stark contrast to cases such as *Parham* where there was truly no connection between the dispute and the plaintiff's selected forum. In *Parham,* a person living in North Carolina sued his former employer alleging breach of a severance agreement. The employer was located in New Jersey. The plaintiff lived in North Carolina before working for the employer and returned here after his employment ended, but actually lived in New York most of the time he was employed and worked in New Jersey, New York, Denver, and Pennsylvania until his employment ended. Thus, there was essentially no connection between his employment, his severance, and North Carolina. This is a far cry from the present case where plaintiff entered the contract while operating here and made critical decisions in its North Carolina offices that led to the dispute between the parties.

Defendant also raises another argument which may be intended to turn plaintiff's choice of forum in its favor. It contends that the contract between the parties contained a forum selection clause mandating that any disputes between the parties be litigated in courts in Washington. This forum selection clause was located in boil-erplate language on the back of acknowledgment forms issued by defendant following its receipt of plaintiff's purchase orders. Plaintiff contests the fact that it was ever a part of the contract between the parties.

Defendant's reliance on the forum selection clause is somewhat mysterious because it does not specifically state the role it expects the clause to play in the case or cite to any law supporting the use of the clause. Its only specific argument based on the clause is a statement in its reply brief[1] that, even if the clause is not a part of the contract between the parties, "the clause nonetheless serves as additional evidence that the facts of this case bear a closer relationship to Washington than they do to North Carolina." (Reply Brf. p. 3) This, of course, is incorrect. The inclusion of the clause in boilerplate language shows only that defendant, like most other businesses, prefers to litigate any disputes in its home state and that it likely includes this language as a standard part of its business forms in order to encourage this result. It in no way speaks to the relation of the actual dispute to any particular forum. The status of plaintiff's choice of forum is not diminished because of a lack of connections to the forum in this case or the existence of the forum selection clause in defendant's acknowledgments.[2]

---

1. Reply briefs are limited to discussion of matters newly raised in the response and may not inject new grounds. Local Rule 7.3(h). The argument was not contained in the main brief and, therefore, the issue of whether the clause is part of the contract is not before the Court.

2. As it so happens, forum selection clauses requiring litigation in a forum other than the one selected by a plaintiff can actually make that forum the "default" forum in the transfer analysis. *Republic Mortg. Ins. Co. v. Brightware, Inc.,* 35 F.Supp.2d 482, 486 (M.D.N.C. 1999). However, defendant has not proffered the forum selection clause for this purpose and the Court will not make arguments for a party. In any event, there would be potential problems with such an assertion. First, defendant may not be able to show that the acknowledgments were received by plaintiff. It states in its answer and counterclaim only that the acknowledgments were "issued," not that they were sent to or received by plaintiff. (Counterclaim ¶ 8) Second, even if sent and received, the forum selection clause may not be a part of the contract under the applicable sections of the Uniform Commercial Code. The additional terms would not be a part of a contract between merchants if they materially alter the contract or if the original order required written acceptance of additional terms; which it apparently did. N.C. Gen.

## B. Access to Sources of Proof

■ The second factor in the transfer analysis is access to sources of proof. The factor is neutral in the present case. Plaintiff's documents and witnesses are located in this district; defendant's are in Washington. Plaintiff has supplied a list of witnesses, while defendant has not, so it is not possible to compare the number of witnesses. However, it is enough to say that plaintiff's list is substantial enough to make the factor at least neutral.

## C. View of the Premises

Defendant states that any view of the premises would have to occur in Washington because that is where the products bought under the parties' contract are located. While this is true, it is also irrelevant because there is no indication that a view will be necessary in the case. *See, e.g., Rice v. Bellsouth Advertising & Pub. Corp.,* 240 F.Supp.2d 526, 530 (W.D.N.C. 2002)(this factor irrelevant in contract action where no view is foreseeable).

## D. Enforceability of a Judgment

■ Defendant claims that this factor weighs in favor of transfer because the disputed funds and goods are located in Washington. However, it again states a correct fact without showing that it makes a difference in the case. In deciding transfers between two federal districts, this factor has little relevance because a federal judgment rendered in one district is likely enforceable in another. *E'Cal Corp. v. Office Max, Inc.,* No. Civ. A. 01–3281, 2001 WL 1167534, at *4 (E.D.Pa. Sept.07, 2001)(citing 17 James Wm. Moore, et al., *Moore' s Federal Practice,* ¶ 111.13(1)(I) (3d. ed.1997)). Because defendant has not shown that this is not true

in the present case, the factor does not weigh in favor of transfer.

## E. Court Congestion

■ The next factor argued by the parties is congestion of the court dockets in this District and the Western District of Washington. Defendant cites statistics indicating that the median time from filing to disposition of civil actions in Washington was 7.2 months in 2004. The time in this District was 10.8 months. The median times from filing to trial of civil actions in 2004 were 16.4 months in Washington and 19 months in this District. As defendant points out, the times in Washington are marginally shorter than the times here. However, this factor still does not weigh strongly in favor of transfer because the times are only marginally shorter. *See, e.g., Burstein v. Applied Extrusion Technologies, Inc.,* 829 F.Supp. 106 (D.Del. 1992). Defendant has not shown that court schedules would play a dramatic role no matter which forum entertains the case.

## F. Controlling Law

■ The final factor argued by defendant as weighing in favor of transfer is the law that will control the case given that it is a diversity action. Defendant contends that Washington law will control because its acknowledgments acted as an acceptance which formed the contract in Washington. Plaintiff does not deny that its breach of contract claim will be decided using Washington law, but instead counters that its tort claims will be resolved using North Carolina law. Therefore, it concludes that the case is one involving law from both states. Defendant calls this into question saying that the place where the

Stat. § 25–2–207(2)(a) & (b); Wash. Rev.Code § 62A.2–207(2)(a) & (b); (Cangiano Decl. Ex. 1, ¶ 1). Courts have held that forum selection clauses do materially alter contracts. *See*

*General Instrument Corp. v. Tie Mfg., Inc.,* 517 F.Supp. 1231, (S.D.N.Y.1981); *Lively v. IJAM, Inc.,* 2005 OK CIV APP 29, 114 P.3d 487, 493 (Okla.Civ.App.2005)(collecting cases).

injury occurred, not where the injury is felt, will be controlling. Still it is not clear that North Carolina law will play no part with respect to the tort claims. Whichever law is applied to any of the claims, it does not appear that the case is one that is complex or involves novel issues of law so that either this Court or the one in Washington would have difficulty deciding the case. For this reason, the Court finds that the factor does not weigh either for or against transfer.

### III. Conclusion

When all is said and done, the first factor in the transfer analysis, plaintiff's choice of forum, weighs in favor of keeping the case in this District. This factor is particularly important because, " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Collins v. Straight, Inc.,* 748 F.2d 916, 921 (4th Cir.1984)(quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). On the whole, the other factors are mainly neutral and certainly do not outweigh the first factor given the controlling role it plays in the analysis. For this reason, defendant's motion to transfer should be denied.

**IT IS THEREFORE RECOMMENDED** that defendant's motion to transfer the case to the Western District of Washington (docket no. 16) be denied.

June 7, 2006.